# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY, et al.

      v.                                  Civ. No. 08-00496(RJL)

SYRIAN ARAB REPUBLIC, et al.

## NOTICE OF PENDING ACTION

TO THE CLERK OF THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA:

      You are hereby respectfully notified that this action was instituted by a complaint filed in this Court on March 21, 2008, pursuant to 28 U.S.C. §1605A, a copy of which Complaint is attached to this Notice of Pending Action.

      Pursuant to 28 U.S.C. §1605A(g)(1), a lien of lis pendens is hereby established upon all real property and tangible personal property that is subject to attachment in aid of execution, or execution, under 28 U.S.C. §1610, located within this judicial district and titled in the name of defendants: Syrian Arab Republic; Mustafa Tlass; Syrian Military Intelligence; Hassan Khalil; Assef Shawkat; Ali Douba; Syrian Air Force Intelligence Directorate; and/or Ibrahim Hueiji.

      You are hereby respectfully requested to file this Notice of Pending Action in the same manner as any pending action, indexed by listing as defendants all named defendants, as required by 28 U.S.C. §1605A(g)(2).

                            Plaintiffs, by their Attorney,

                                  /S/
                          David J. Strachman
                          D.C. Bar No. D00210
                          McIntyre, Tate & Lynch
                          321 South Main Street, Ste. 400
                          Providence, RI 02903
                          (401) 351-7700

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHABTAI SCOTT SHATSKY,
JO ANNE SHATSKY,
individually and as legal and personal representatives
of the Estate of Keren Shatsky,
YOSEPH SHATSKY,
MIRIAM SHATSKY,
DAVID SHATSKY,
160 Herzl Street 5th Fl.
Tel Aviv, Israel

TZIPPORA SHATSKY,
18 Shai Agnon Street Apt. 15
Ra'anana, Israel

SARA SHATSKY,
1 Zvi Yehuda Street Apt. 3
Jerusalem, Israel

MICHAEL THALER, individually, as
legal and personal representative of the Estate of Rachel Thaler
and as natural guardian of plaintiff Zvi Thaler,
3580 Pall Mall Road
Jacksonville, FL 32257

GINETTE LANDO THALER, individually, as
legal and personal representative of the Estate of Rachel Thaler
and as natural guardian of plaintiff Zvi Thaler
ZVI THALER, minor, by his guardians
Ginette Lando Thaler and Michael Thaler
LEOR THALER,
11 Stav Street Apt. 26
Hod Hasharon, Israel

ISAAC THALER,
2015 Corporate Drive
Boynton Beach FL 33426

HILLEL TRATTNER,
RONIT TRATTNER,
12 Pinchi Street Apt. 20

Petah Tikva 49742, Israel

ARON S. TRATTNER,
SHELLEY TRATTNER,
14 Hagefen Street
Karnei Shomron 44853 Israel

STEVEN BRAUN,
25 Alkachi Street # 3
Jerusalem 93807, Israel

CHANA FRIEDMAN,
6 Berenfeld Street,
Tel Aviv, Israel

MIRIAM FRIEDMAN, minor,
by her guardian Bella Friedman,
BELLA FRIEDMAN, individually and as
natural guardian of plaintiff Miriam Friedman
ILAN FRIEDMAN,
YEHIEL FRIEDMAN,
ZVI FRIEDMAN,
30 Azar Street
Ramat Hasharon, Israel

MIRIAM MENDELSON MILLER, individually
and as legal and personal representative of the Estate of Yair Mendelson
Dolev, Mobile Post Modiin
71935 Israel

and

ELIZABETH HAR ZAHAV
82 Midbar Sinai Street Apt. 3
Jerusalem, Israel

PLAINTIFFS,

vs.

THE SYRIAN ARAB REPUBLIC
c/o Foreign Minister Walid al-Mualem
Ministry of Foreign Affairs
Shora, Muhajireen, Damascus, Syria

2

THE SYRIAN MINISTRY OF DEFENSE
Omayad Square
Damascus, Syria

MUSTAFA TLASS
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

SYRIAN MILITARY INTELLIGENCE
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

HASSAN KHALIL
Syrian Military Intelligence
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

ASSEF SHAWKAT
Syrian Military Intelligence
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

ALI DOUBA
Syrian Military Intelligence
(aka Shu'bat al-Mukhabarat al-'Askariyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

THE SYRIAN AIR FORCE INTELLIGENCE DIRECTORATE
(aka Idarat al-Mukhabarat al-Jawiyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

IBRAHIM HUEIJI
Syrian Air Force Intelligence Directorate

(aka Idarat al-Mukhabarat al-Jawiyya)
Syrian Ministry of Defense
Omayad Square
Damascus, Syria

and

JOHN DOES 1-20.

DEFENDANTS.

## COMPLAINT

Plaintiffs, complaining of the Defendants, allege for their Complaint as follows:

### INTRODUCTION

1.      This is an action for wrongful death, personal injury and related torts, pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 *et seq.*, brought by United States citizens, and by the guardians, family members and the legal and personal representatives of the estates of United States citizens, who were killed and injured by terrorist attacks sponsored, caused, facilitated and carried out by the defendants.

### JURISDICTION

2.      This Court has jurisdiction over this matter and over the defendants pursuant to 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), 1605A(a)(1) and 1605A(c), which permit civil actions for wrongful death, personal injury and related torts against state sponsors of terrorism and their officials, employees and agents.

### VENUE

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(d) and 1391(f)(4).

## THE PARTIES

4.      Plaintiffs SHABTAI SCOTT SHATSKY and JO ANNE SHATSKY, at all times relevant hereto are and were American citizens, and the parents, heirs and legal and personal representatives of the estate of Keren Shatsky, a 14 year-old American citizen murdered in a terrorist bombing facilitated, caused, carried out and sponsored by the defendants at a pizzeria in Karnei Shomron, in the Samaria region of the West Bank, on February 16, 2002 (hereinafter: the "terrorist bombing"). Plaintiffs SHABTAI SCOTT SHATSKY and JO ANNE SHATSKY bring this action individually and on behalf of the estate of Keren Shatsky.

5.      Plaintiffs TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY and DAVID SHATSKY at all times relevant hereto are and were American citizens and the siblings of decedent Keren Shatsky.

6.      Plaintiffs GINETTE LANDO THALER and MICHAEL THALER at all times relevant hereto are and were the parents, heirs and legal and personal representatives of the estate of Rachel Thaler, a 15 year-old American citizen murdered in the terrorist bombing. Plaintiff MICHAEL THALER at all times relevant hereto is and was an American citizen. Plaintiffs GINETTE LANDO THALER and MICHAEL THALER bring this action individually, on behalf of the estate of Rachel Thaler and on behalf of their minor son plaintiff ZVI THALER.

7.      Plaintiffs LEOR THALER, ZVI THALER, minor, and ISAAC THALER at all times relevant hereto are and were American citizens and the siblings of decedent Rachel Thaler.

8.      Plaintiff LEOR THALER suffered severe physical and other injuries in the terrorist bombing.

9.      Plaintiff HILLEL TRATTNER suffered severe physical and other injuries in the terrorist bombing, and at all times relevant hereto is and was an American citizen.

10.     Plaintiff RONIT TRATTNER suffered severe physical and other injuries in the terrorist bombing, and at all times relevant hereto is and was the spouse of plaintiff HILLEL TRATTNER.

11.     Plaintiffs ARON S. TRATTNER and SHELLEY TRATTNER at all times relevant hereto are and were American citizens and the parents of plaintiff HILLEL TRATTNER.

12.     Plaintiff STEVEN BRAUN suffered severe physical and other injuries in the terrorist bombing, and at all times relevant hereto is and was an American citizen.

13.     Plaintiff CHANA FRIEDMAN suffered severe physical and other injuries in the terrorist bombing, and at all times relevant hereto is and was an American citizen.

14.     Plaintiffs ILAN FRIEDMAN, YEHIEL FRIEDMAN, ZVI FRIEDMAN and MIRIAM FRIEDMAN, minor, at all times relevant hereto are and were American citizens and the siblings of plaintiff CHANA FRIEDMAN.

15.     Plaintiff BELLA FRIEDMAN at all times relevant hereto is and was an American citizen and the mother of plaintiff CHANA FRIEDMAN. Plaintiff BELLA FRIEDMAN brings this action individually and on behalf of her minor daughter plaintiff MIRIAM FRIEDMAN.

16.     Plaintiff MIRIAM MENDELSON MILLER at all times relevant hereto is and was an American citizen, and the widow, heir and legal and personal representative

of the estate of Yair Mendelson, who was murdered in a terrorist shooting facilitated, caused, carried out and sponsored by defendants on March 26, 1991, near the community of Dolev, in the Samaria region of the West Bank (hereinafter: the "terrorist shooting"). Plaintiff MIRIAM MENDELSON MILLER brings this action individually and on behalf of the estate of Yair Mendelson.

17.     Plaintiff ELIZABETH HAR ZAHAV at all times relevant hereto is and was an American citizen. Plaintiff ELIZABETH HAR ZAHAV was present at the scene of the terrorist murder of Yair Mendelson.

18.     Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. §1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. §2405(j)). Syria provided material support and resources for the commission of acts of extrajudicial killing (within the meaning of 28 U.S.C. §1605A) including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

19.     Defendant The Syrian Ministry of Defense (hereinafter "SMD") is, and at all times relevant hereto was, responsible for operating and controlling Syria's armed forces and intelligence services. Within the scope of its agency and office, SMD provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

20.  Defendant Mustafa Tlass (hereinafter "Tlass") at all times relevant hereto was the Syrian Minister of Defense and an official, employee and agent of Syria and SMD. Within the scope of his office, employment and agency, Tlass provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

21.  Defendant Syrian Military Intelligence, also known as Shu'bat al-Mukhabarat al-Askariyya, (hereinafter "SMI") is, and at all times relevant hereto was, Syria's military intelligence agency. Within the scope of its agency and office, SMI provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

22.  Defendant Hassan Khalil (hereinafter "Khalil") is, and at all times relevant hereto was, the commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Khalil provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

23.  Defendant Assef Shawkat (hereinafter "Shawkat") is, and at all times relevant hereto was, the deputy commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Shawkat

provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

24.    Defendant Ali Douba (hereinafter "Douba") is the former commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Douba provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

25.    Defendant The Syrian Air Force Intelligence Directorate, also known as Idarat al-Mukhabarat al-Jawiyya, (hereinafter "SAFID") is, and at all times relevant hereto was, an agency of defendant Syria specifically assigned to plan, fund, facilitate and carry out terrorist attacks. Within the scope of its agency and office, SAFID provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

26.    Defendant Ibrahim Hueiji (hereinafter "Hueiji") is, and at all times relevant hereto was, the commander of SAFID and an official, employee and agent of Syria, SMD and SAFID. Within the scope of his office, employment and agency, Hueiji provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other

actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

27.    Defendants JOHN DOES 1-20 are, and at all times relevant hereto were, officials, employees and agents of Syria, who within the scope of their office, employment and agency provided material support and resources for the commission of acts of extrajudicial killing including the terrorist bombing and the terrorist shooting, and performed other actions that caused the terrorist bombing and the terrorist shooting and harm to the plaintiffs herein.

## STATEMENT OF FACTS

28.    Since its establishment in the 1960s and until the present day, the Palestine Liberation Organization ("PLO") has planned and carried out thousands of terrorist bombings and shootings, resulting in the deaths of hundreds of innocent civilians and the wounding of thousands more. Dozens of United States citizens have been murdered, and scores more wounded, by terrorist attacks carried out by the PLO. At all times relevant hereto, the PLO has carried out and utilized these terrorist attacks as an established and systematic policy and practice, as a means of advancing and achieving its political goals.

29.    The PLO has rarely, if ever, carried out terrorist attacks in its own name. Rather, at all times relevant hereto, the PLO has funded, planned and carried out terrorist attacks through its officials, agents and employees, who are and were organized into various factions, units, cells and groups which plan and execute terrorist attacks on behalf of and for the PLO, and/or as agents and/or as organs and/or as instrumentalities and/or as alter egos of the PLO, using various and sundry appellations and *noms de guerre* (collectively hereinafter referred to as PLO "organs").

30. One of the PLO's terrorist organs is faction of the PLO known as the "Popular Front for the Liberation of Palestine" ("PFLP").

31. Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. §2405(j)).

32. During the period relevant hereto, defendants Syria, SMD, Tlass, SMI, Khalil, Shawkat, Douba, SAFID, Hueiji and John Does 1-20 ("Syrian defendants") provided the PFLP faction of the PLO with material support and resources within the meaning of 28 U.S.C. §1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist shooting and the terrorist bombing. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist the PFLP faction of the PLO to achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, the West Bank and Gaza, and weakening Israel's economy, social fabric, and military strength and preparedness.

33. The Syrian defendants provided the material support and resources detailed below to the PFLP faction of the PLO pursuant to an agreement reached between Syria and the PFLP faction of the PLO in 1968, which remains in force until today. Under that agreement, the PFLP faction of the PLO undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide the PFLP faction of the PLO with material support and resources to

carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

34.     The material support and resources which were provided by the Syrian defendants to the PFLP faction of the PLO in the years immediately prior to the terrorist bombing and the terrorist shooting for the purpose of facilitating acts of extrajudicial killing and terrorism included *inter alia*: provision of massive financial support to the PFLP faction of the PLO totaling many millions of dollars for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms and other weapons and matériel to the PFLP faction of the PLO; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to the PFLP faction of the PLO; providing use of Syria-owned and operated training bases and military facilities in which terrorist training was provided to the PFLP faction of the PLO and its terrorist operatives; providing the PFLP faction of the PLO and its terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing the PFLP faction of the PLO means of electronic communication and electronic communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to the PFLP faction of the PLO by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable the PFLP faction of the PLO to surreptitiously transfer funds used to finance terrorist attacks; and means of transportation, including allowing terrorist operatives of the PFLP faction of the PLO passage and transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

35.     At all times relevant hereto, the Syrian defendants provided the PFLP faction of the PLO and its terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by the Syrian defendants and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist shooting and the terrorist bombing. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of the Syrian defendants acting within the scope of their agency and employment and under the express command and authorization of the Syrian defendants.

36.     In addition, at all times relevant hereto, the Syrian defendants provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to the PFLP faction of the PLO and its terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from the Syrian defendants, and which acted as instrumentalities, agents and proxies of the Syrian defendants for the purpose of providing terrorist training and other material support and resources to the PFLP faction of the PLO.

37.     At all times relevant hereto, the Syrian defendants provided the PFLP faction of the PLO and its terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered. This lodging, safe

haven and shelter was provided on military bases and facilities, and in residences, owned and controlled by Syria.

38.     The Syrian defendants gave substantial aid, assistance and encouragement to one another and to the PFLP faction of the PLO, and provided the massive material support and resources described above to the PFLP faction of the PLO, and thereby aided and abetted the PFLP faction of the PLO, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist shooting and the terrorist bombing. The Syrian defendants did so with actual knowledge that the PFLP faction of the PLO had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the PFLP faction of the PLO.

39.     The Syrian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with the PFLP faction of the PLO, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the terrorist shooting and the terrorist bombing. The Syrian defendants did so with actual knowledge that the PFLP faction of the PLO had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with the PFLP faction of the PLO.

40.     At all times relevant hereto, defendants SMD, SMI and SAFID were agencies, instrumentalities and/or offices of defendant Syria, and performed acts on

behalf of defendant Syria, in furtherance of the interests and policy of defendant Syria and within the scope of their agency and office, within the meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the terrorist shooting and the terrorist bombing and harm to the plaintiffs herein, in that defendants SMD, SMI and SAFID implemented and acted as conduits and instrumentalities for Syria's provision of funds, terrorist training and other material support and resources to the PFLP faction of the PLO for the commission of acts of extrajudicial killing and international terrorism including the terrorist shooting and the terrorist bombing.

41.    Defendant Syria authorized, ratified and approved the acts of defendants SMD, SMI and SAFID.

42.    Accordingly, defendant Syria is vicariously liable for the acts of defendants SMD, SMI and SAFID.

43.    At all relevant times, defendants Tlass, Khalil, Shawkat, Douba, Hueiji and John Does 1-20 were agents, officers and employees of defendants Syria, SMD, SMI and SAFID, and performed acts on behalf of defendants Syria, SMD, SMI and SAFID, in furtherance of the interests and policy of defendant Syria, SMD, SMI and SAFID and within the scope of their agency and office, within the meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the terrorist shooting and the terrorist bombing and harm to the plaintiffs herein, in that defendants Tlass, Khalil, Shawkat, Douba, Hueiji and John Does 1-20 authorized, planned and caused the provision of funds, terrorist training and other material support and resources by Syria, SMD, SMI and SAFID to the PFLP faction of the PLO for the commission of acts of

15

extrajudicial killing and international terrorism including the terrorist shooting and the terrorist bombing.

44.     Defendants Syria, SMD, SMI and SAFID authorized, ratified and approved the acts of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and John Does 1-20.

45.     Accordingly, defendants Syria, SMD, SMI and SAFID are vicariously liable for the acts of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and John Does 1-20.

## THE TERRORIST SHOOTING

46.     On December 22, 1987, the President signed into law the Anti-Terrorism Act of 1987 ("ATA") P.L. 100-204, Title X, Dec. 22, 1987, 101 Stat. 1406.

47.     In §1002 of the ATA, codified at 22 U.S.C. §5201, Congress expressly found and determined that "the PLO and its constituent groups have taken credit for, and been implicated in, the murders of dozens of American citizens abroad," and that "the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law …". 22 U.S.C. §5201.

48.     Defendants brazenly ignored the finding and determination by Congress that the PLO was responsible for "the murders of dozens of American citizens abroad" and that "the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States," and continued to conspire with and systematically provide massive material support and resources to the PLO and its organs, including the PFLP, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism by the PLO and its organs, including the PFLP, and

with actual knowledge that the PLO and its organs, including the PFLP, were planning to carry out terrorist attacks against U.S. citizens and that the material support and resources provided would facilitate and cause the extrajudicial killing of U.S. citizens and other innocent civilians.

49.     At an unknown date or dates before March 26, 1991, the PFLP faction of the PLO planned, conspired and made preparations to murder and injure innocent Jewish civilians by means of a terrorist machine-gun attack on a civilian vehicle traveling on a public road in the Samaria region of the West Bank.

50.     Accordingly, on March 26, 1991, or soon before that date, the PFLP faction of the PLO instructed at least two of its trained agents, operatives and employees (hereinafter "Gunmen") to lay an ambush on March 26, 1991 on the road between Ramallah and Dolev in the Samaria region, in order to carry out the terrorist machine-gun attack.

51.     The PFLP faction of the PLO chose to carry out the terrorist machine-gun attack on the road between Ramallah and Dolev with actual knowledge that dozens of American citizens and their close family members travel that road daily.

52.     At approximately 8:15 PM on March 26, 1991, the Gunmen opened unprovoked machine-gun fire on a private civilian passenger car driven by Yair Mendelson on the road between Ramallah and Dolev, with the intention of murdering or injuring Yair Mendelson.

53.     Yair Mendelson was struck and killed by the bullets fired by the Gunmen.

54.    Yair Mendelson was the husband of PLAINTIFF MIRIAM MENDELSON MILLER. Yair and Miriam Mendelson had three children, then aged ten, seven and eighteen months, who were orphaned by Yair's murder.

55.    At the time of his murder Yair Mendelson was employed as construction foreman and was studying engineering, and served as a volunteer ambulance driver.

56.    Plaintiff ELIZABETH HAR ZAHAV, who had been a close friend and neighbor of Yair Mendelson for many years, happened to arrive at the scene of the terrorist shooting approximately two minutes after it occurred. Plaintiff ELIZABETH HAR ZAHAV observed Yair Mendelson's car stopped on the road and riddled with bullets. Despite the great danger to herself Plaintiff ELIZABETH HAR ZAHAV immediately stopped her vehicle and ran the Mendelson car. Opening the door she found her longtime friend and neighbor slumped over and covered with blood; when she righted Yair Mendelson she discovered to her shock and horror that his skull had been split by the terrorists' bullets and that his brain matter had spilled out.

57.    The Syrian defendants conspired and acted in concert with the PFLP faction of the PLO, in pursuit of their common goals, design and agreement with the PFLP faction of the PLO discussed above, to carry out the terrorist shooting murder of Yair Mendelson on March 26, 1991 and other such acts of extrajudicial killing and international terrorism, and that terrorist shooting was carried out by the PFLP faction of the PLO further to and as implementation of their aforementioned agreement and conspiracy with the Syrian defendants.

58.    The PFLP faction of the PLO carried out the terrorist shooting murder of Yair Mendelson utilizing funds, weapons, terrorist training and other material support,

resources, aid and assistance provided by the Syrian defendants for the specific purpose of carrying out that terrorist shooting and other such acts of extrajudicial killing and international terrorism.

## THE TERRORIST BOMBING

59.     In the months prior to February 16, 2002, the PFLP faction of the PLO publicly called for and threatened terrorist attacks against American targets. In response to these threats, the United States Department of State publicly demanded that defendant Syria take action to prevent the threatened terrorist attacks against U.S. citizens.

60.     Defendants brazenly ignored the U.S. demand, and continued to conspire with and systematically provide massive material support and resources to the PFLP faction of the PLO with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism by the organs, and with actual knowledge that the PFLP faction of the PLO was planning to carry out terrorist attacks against U.S. citizens and that the material support and resources provided would facilitate and cause the extrajudicial killing of U.S. citizens and other innocent civilians.

61.     Further to and as implementation of the prior decision and threats by the PFLP faction of the PLO to attack U.S. citizens, the PFLP faction of the PLO at an unknown date or dates before February 16, 2002, planned and made preparations to carry out a terrorist bombing at a crowded public place frequented by U.S. citizens. The PFLP faction of the PLO chose to carry out the terrorist bombing on February 16, 2002, in the town of Karnei Shomron in the Samaria region of the West Bank, where hundreds of American citizens live, work and shop daily.

62. Like countless American teenagers and young people everywhere, decedents Rachel Thaler and Keren Shatsky, and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN decide to spend Saturday evening, February 16, 2002, at a pizza parlor.

63. Between approximately 6:30 and 7:55 P.M. on February 16, 2002, decedents Rachel Thaler and Keren Shatsky, and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN arrived at a pizza parlor located in an outdoor shopping mall in Karnei Shomron, ordered pizza and took seats at the banks of tables arrayed in front of the pizzeria. Several dozen other diners, most of them teenagers and young people, filled the tables and surrounding area.

64. At approximately 7:55 P.M. on February 16, 2002, acting upon the instructions and directions of the PFLP faction of the PLO, a trained agent and/or employee of the PFLP faction of the PLO known as Sadek Abdel Hafez (hereinafter: "Terrorist Bomber") arrived at the Karnei Shomron pizzeria in order to murder and injure the American and Israeli citizens eating at the pizzeria by means of a powerful explosive device with which he was provided for this specific purpose by the PFLP faction of the PLO.

65. At the time that the Terrorist Bomber arrived at the pizzeria, decedent Rachel Thaler and plaintiffs LEOR THALER and CHANA FRIEDMAN were sitting together at one of the tables arrayed in front of the pizzeria, speaking animatedly and distinctly in English. Decedent Keren Shatsky and plaintiffs HILLEL TRATTNER, RONIT TRATTNER and STEVEN BRAUN were nearby. The Terrorist Bomber made

directly for the table where decedent Rachel Thaler and plaintiffs LEOR THALER and CHANA FRIEDMAN were sitting and speaking in English, and detonated the explosive device he was carrying when he reached their table.

66.     As a result of the explosion, decedents Keren Shatsky and Rachel Thaler were killed, and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN suffered severe burns, shrapnel wounds and other serious injuries. The explosion also killed an Israeli teenager, and injured dozens of others.

67.     The Syrian defendants conspired and acted in concert with the PFLP faction of the PLO, in pursuit of their common goals, design and agreement with the PFLP faction of the PLO discussed above, to carry out the terrorist bombing on February 16, 2002, and the terrorist bombing was carried out by the PFLP faction of the PLO further to and as implementation of its aforementioned agreement and conspiracy with the Syrian defendants.

68.     The PFLP faction of the PLO constructed the explosive device used in the terrorist bombing and carried out the terrorist bombing utilizing funds, explosives, terrorist training and other material support, resources, aid and assistance provided by the Syrian defendants for the specific purpose of carrying out the terrorist bombing and other such acts of extrajudicial killing and international terrorism.

## FIRST COUNT
## ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS
### ACTION FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

69.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

70. Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. §1605A.

71. Syria and the other defendants provided material support and resources, within the meaning of 28 U.S.C. §1605A, which caused and facilitated the terrorist bombing and the terrorist shooting.

72. Defendants SMD, SMI and SAFID, Tlass, Khalil, Shawkat, Douba, Hueiji and John Does 1-20 are officials, employees, and/or agents of Syria, and they provided the material support and resources which caused and facilitated the terrorist bombing and the terrorist shooting within the scope of their office, employment and/or or agency.

73. The terrorist bombing and the terrorist shooting were extrajudicial killings within the meaning of 28 U.S.C. §1605A.

74. Decedent Yair Mendelson was murdered in the terrorist shooting. The murder of Yair Mendelson caused decedent, his estate and plaintiffs MIRIAM MILLER MENDELSON and ELIZABETH HAR ZAHAV severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

75. Decedent Keren Shatsky was murdered in the terrorist bombing. The murder of Keren Shatsky caused decedent, her estate and plaintiffs SHABTAI SCOTT SHATSKY, JO ANNE SHATSKY, TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY and DAVID SHATSKY severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance,

companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

76.     Decedent Rachel Thaler was murdered in the terrorist bombing. The murder of Rachel Thaler caused decedent, her estate and plaintiffs GINETTE LANDO THALER, MICHAEL THALER, LEOR THALER, ZVI THALER and ISAAC THALER severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

77.     Plaintiffs LEOR THALER, HILLEL TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN suffered severe physical and psychological injuries as a result of the terrorist bombing, including: burns, disfigurement, blindness, loss of physical and mental functions and shrapnel wounds; extreme pain and suffering; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium; and pecuniary loss and loss of income.

78.     The injuries suffered by plaintiffs LEOR THALER, HILLEL TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN in the terrorist bombing caused plaintiffs GINETTE LANDO THALER, MICHAEL THALER, ZVI THALER, ISAAC THALER, ARON S. TRATTNER, SHELLEY TRATTNER, RONIT TRATTNER, BELLA FRIEDMAN, ILAN FRIEDMAN, MIRIAM FRIEDMAN, YEHIEL FRIEDMAN and ZVI FRIEDMAN severe harm, including: loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium; and pecuniary loss and loss of income.

79.     The harm and injuries suffered by plaintiffs due to the terrorist bombing and the terrorist shooting were the direct and proximate result of defendants' conduct described herein.

80.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages under 28 U.S.C. §1605A(c), in such sums as may hereinafter be determined.

81.     Defendants' conduct was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. §1605A(c).

### SECOND COUNT
### AGAINST ALL DEFENDANTS
**ON BEHALF OF PLAINTIFFS MIRIAM MENDELSON MILLER, SHABTAI SCOTT SHATSKY, JO ANNE SHATSKY, TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY, DAVID SHATSKY, GINETTE LANDO THALER, MICHAEL THALER, LEOR THALER, ZVI THALER, ISAAC THALER AND THE ESTATES OF YAIR MENDELSON, KEREN SHATSKY AND RACHEL THALER**
### WRONGFUL DEATH
**(Under the Law of the District of Columbia or Other Applicable Law)**

82.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

83.     Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the terrorist shooting and the terrorist bombing.

84.     Defendants' behavior constituted a breach of legal duties to desist from committing, or aiding, abetting, authorizing, encouraging or conspiring to commit acts of

extrajudicial killing, and to refrain from intentionally, wantonly, and/or negligently authorizing or causing the infliction of death, physical injuries and harm to persons such as the plaintiffs herein and their decedents.

85.     Defendants' actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the terrorist shooting and the terrorist bombing and the deaths of decedents Yair Mendelson, Keren Shatsky and Rachel Thaler.

86.     At the time of his death, decedent Yair Mendelson was 31 years of age, enjoying good health, was industrious and in possession of all his faculties.

87.     The murder of Yair Mendelson caused decedent, his estate and plaintiff MIRIAM MILLER MENDELSON severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

88.     At the time of her death, decedent Keren Shatsky was 14 years of age, enjoying good health, was industrious and in possession of all her faculties.

89.     The murder of Keren Shatsky caused decedent, her estate and plaintiffs SHABTAI SCOTT SHATSKY, JO ANNE SHATSKY, TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY and DAVID SHATSKY severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

90.     At the time of her death, decedent Rachel Thaler was 15 years of age, enjoying good health, was industrious and in possession of all her faculties.

91.     The murder of Rachel Thaler caused decedent, her estate and plaintiffs GINETTE LANDO THALER, MICHAEL THALER, LEOR THALER, ZVI THALER and ISAAC THALER severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

92.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

93.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

### THIRD COUNT
### AGAINST ALL DEFENDANTS
### ON BEHALF OF PLAINTIFFS THE ESTATES OF YAIR MENDELSON, KEREN SHATSKY AND RACHEL THALER
### SURVIVAL DAMAGES
### (Under the Law of the District of Columbia or Other Applicable Law)

94.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

95.     The murder of Yair Mendelson caused by defendants' actions described herein caused Yair Mendelson and his estate severe injury, including pecuniary loss and loss of income.

96.     The murder of Keren Shatsky caused by defendants' actions described herein caused Keren Shatsky and her estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the time of the bombing until her death,

decedent Keren Shatsky suffered great conscious pain, shock and physical and mental anguish.

97.     The murder of Rachel Thaler caused by defendants' actions described herein caused Rachel Thaler and her estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the time of the bombing until her death 12 days later on February 27, 2002, decedent Rachel Thaler suffered great conscious pain, shock and physical and mental anguish.

98.     Defendants are therefore jointly and severally liable to the Estates of Yair Mendelson, Keren Shatsky and Rachel Thaler for the full amount of decedents' damages, in such sums as may hereinafter be determined.

99.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

**FOURTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF PLAINTIFFS LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN AND CHANA FRIEDMAN**
**BATTERY**
**(Under the Law of the District of Columbia and the Law of the State of Israel)**

100.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

101.     The terrorist bombing caused plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN severe physical and psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of present and future income.

102. The terrorist bombing constituted a battery on the persons of plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN under the law of the District of Columbia.

103. Causes of action in tort in Israeli law are codified in the *Civil Wrongs Ordinance (New Version) - 1968*, (hereinafter "CWO"). The CWO provides that any person injured or harmed by the torts enumerated in the CWO is entitled to relief from the person liable or responsible for the tort.

104. CWO §23 creates a tort of Assault and Battery defined as the intentional use of any kind of force, directly or indirectly, against a person's body, in any manner, without that person's consent; or an attempt or threat, by act or gesture, to use force against a person's body, when the person making the attempt or threat can be reasonably assumed to be have the intent and ability to carry out the attempt or threat.

105. The terrorist bombing therefore constituted a battery on the persons of plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN under Israeli law.

106. As a result of the severe injuries inflicted on them by the terrorist bombing, plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN required hospitalization and medical treatment.

107. Plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN continue to suffer from permanent injuries caused by the terrorist bombing.

108.   Defendants' actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the terrorist bombing and the battery on the persons of plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN and the injuries plaintiffs suffered thereby.

109.   Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

110.   Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

### FIFTH COUNT
### AGAINST ALL DEFENDANTS
### ON BEHALF OF PLAINTIFFS LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN AND CHANA FRIEDMAN
### ASSAULT
### (Under the Law of the District of Columbia and the Law of the State of Israel)

111.   The preceding paragraphs are incorporated by reference as though fully set forth herein.

112.   The terrorist bombing and the ensuing carnage caused plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN fear and apprehension of harm and death, and actual physical harm, and constituted an assault on the persons of plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN under the law of the District of Columbia and under §23 of the Israeli CWO.

113.   The terrorist bombing and assault on their persons, which were direct and proximate results of defendants' actions, caused plaintiffs LEOR THALER, HILLEL

TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN extreme mental anguish and actual physical injury and pain and suffering.

114. Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

115. Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

**SIXTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF ALL PLAINTIFFS**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Under the Law of the District of Columbia and the Law of the State of Florida)**

116. The preceding paragraphs are incorporated by reference as though fully set forth herein.

117. Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

118. Defendants intended to, and did in fact, terrorize the plaintiffs, and cause them egregious emotional distress.

119. As a result and by reason of the death of Yair Mendelson, which was caused by the actions of defendants described herein, plaintiff MIRIAM MENDELSON MILLER has been deprived of the services, society, consortium and solatium of her husband, and has suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to her feelings.

120. As a result and by reason of the death of Yair Mendelson, which was caused by the actions of defendants described herein and which she personally witnessed

in all its horror, plaintiff ELIZABETH HAR ZAHAV has suffered and will continue to suffer terror, severe mental anguish and injury to her feelings.

121.    As a result and by reason of the death of Keren Shatsky, which was caused by the actions of defendants described herein, plaintiffs SHABTAI SCOTT SHATSKY and JO ANNE SHATSKY have been deprived of the services, society, consortium and solatium of their deceased daughter, and have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

122.    As a result and by reason of the death of Keren Shatsky, which was caused by the actions of defendants described herein, plaintiffs TZIPPORA SHATSKY, YOSEPH SHATSKY, SARA SHATSKY, MIRIAM SHATSKY and DAVID SHATSKY have been deprived of the services, society, consortium and solatium of their deceased sister, and have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

123.    As a result and by reason of the death of Rachel Thaler, which was caused by the actions of defendants described herein, plaintiffs GINETTE LANDO THALER and MICHAEL THALER have been deprived of the services, society, consortium and solatium of their deceased daughter, and have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

124.    As a result and by reason of the death of Rachel Thaler, which was caused by the actions of defendants described herein, plaintiffs LEOR THALER, ZVI THALER and ISAAC THALER have been deprived of the services, society, consortium and solatium of their deceased sister, and have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

125.    As a result and by reason of the injuries caused to LEOR THALER by the actions of defendants described herein, plaintiffs GINETTE LANDO THALER and MICHAEL THALER were deprived of the services, society, company and consortium of their son, and have suffered and will continue to suffer terror, severe mental anguish, grief, and injury to their feelings.

126.    As a result and by reason of the injuries caused to LEOR THALER by the actions of defendants described herein, plaintiffs ZVI THALER and ISAAC THALER were deprived of the services, society, company and consortium of their brother, and have suffered and will continue to suffer terror, severe mental anguish, grief, and injury to their feelings.

127.    As a result and by reason of the injuries caused him by the actions of defendants described herein, plaintiff LEOR THALER was deprived of the services, society, company, guidance and consortium of his parents and brothers, and has suffered and will continue to suffer terror, severe mental anguish, grief, and injury to his feelings.

128.    As a result and by reason of the injuries caused to HILLEL TRATTNER by the actions of defendants described herein, plaintiff RONIT TRATTNER was deprived of the services, society, company and consortium of her husband, and has suffered and will continue to suffer terror, severe mental anguish, grief, and injury to her feelings.

129.    As a result and by reason of the injuries caused to HILLEL TRATTNER by the actions of defendants described herein, plaintiffs ARON S. TRATTNER and SHELLEY TRATTNER were deprived of the services, society, company and consortium of their son, and have suffered and will continue to suffer terror, severe mental anguish, grief, and injury to their feelings.

130. As a result and by reason of the injuries caused him by the actions of defendants described herein, plaintiff HILLEL TRATTNER was deprived of the services, society, company, guidance and consortium of his wife and parents, and has suffered and will continue to suffer terror, severe mental anguish, grief, and injury to his feelings.

131. As a result and by reason of the injuries caused to CHANA FRIEDMAN by the actions of defendants described herein, plaintiff BELLA FRIEDMAN was deprived of the services, society, company and consortium of her daughter, and has suffered and will continue to suffer terror, severe mental anguish, grief, and injury to her feelings.

132. As a result and by reason of injuries caused to CHANA FRIEDMAN by the actions of defendants described herein, plaintiffs ILAN FRIEDMAN, MIRIAM FRIEDMAN, YEHIEL FRIEDMAN and ZVI FRIEDMAN were deprived of the services, society, company and consortium of their sister, and have suffered and will continue to suffer terror, severe mental anguish, grief, and injury to their feelings.

133. As a result and by reason of the injuries caused her by the actions of defendants described herein, plaintiff CHANA FRIEDMAN was deprived of the services, society, company, guidance and consortium of her parents and siblings, and has suffered and will continue to suffer terror, severe mental anguish, grief, and injury to her feelings.

134. Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

135. Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

136. Plaintiffs MICHAEL THALER and ISAAC THALER were domiciliaries of the State of Florida at the time of the terrorist bombing, and their claims under this Count are governed by Florida law. The claims of all the other plaintiffs under this Count are governed by the law of the District of Columbia.

### SEVENTH COUNT
### AGAINST ALL DEFENDANTS
### ON BEHALF OF ALL PLAINTIFFS
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Under the Law of the District of Columbia and the Law of the State of Florida)**

137. The preceding paragraphs are incorporated by reference as though fully set forth herein.

138. Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

139. Defendants' conduct terrorized the plaintiffs and caused them egregious emotional distress.

140. Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

141. Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

142. The claims of plaintiffs MICHAEL THALER and ISAAC THALER under this Count are governed by Florida law. The claims of all the other plaintiffs under this Count are governed by the law of the District of Columbia.

## EIGHTH COUNT
## AGAINST ALL DEFENDANTS
## ON BEHALF OF ALL PLAINTIFFS
## NEGLIGENCE
### (Under the Law of the State of Israel)

143.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

144.    Section 35 of the Israeli CWO creates a tort of Negligence.

145.    CWO §35 provides that a person is liable for the tort of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

146.    CWO §36 provides that the obligation stated in CWO §35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

147.    The Israeli courts have construed the tort of Negligence as including intentional and/or reckless conduct.

148.    Defendants committed acts which a reasonable and prudent person would not have committed under the same circumstances, and refrained from committing acts

which a reasonable and prudent person would have committed under the same circumstances, within the meaning of the CWO.

149.    Defendants did not, in the performance of their occupations, use the skill or exercise the degree of caution which a reasonable person qualified to act in those occupations would have used or exercised under the same circumstances, within the meaning of the CWO.

150.    Defendants acted negligently in connection with the plaintiffs and their decedents, toward whom, in the circumstances described herein, defendants had an obligation not to act as they did. Defendants were obligated not to act as they did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, the plaintiffs' and their decedents were liable to be injured by defendants' acts and omissions described herein.

151.    Defendants' behavior therefore constitutes Negligence under the CWO, and a result of the defendants' negligent behavior decedents Yair Mendelson, Keren Shatsky and Rachel Thaler were murdered and plaintiffs LEOR THALER, HILLEL TRATTNER, RONIT TRATTNER, STEVEN BRAUN and CHANA FRIEDMAN were severely injured, thereby causing the decedents and all plaintiffs severe harm including: pain and suffering; pecuniary loss and loss of income; loss of guidance, society and companionship; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

152.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

153.   Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

### NINTH COUNT
### AGAINST ALL DEFENDANTS
### ON BEHALF OF ALL PLAINTIFFS
### CIVIL CONSPIRACY
**(Under the Law of the District of Columbia, the Law of the State of Florida and the Law of the State of Israel)**

154.   The preceding paragraphs are incorporated by reference as though fully set forth herein.

155.   Defendants knowingly and willingly conspired, agreed and acted in concert with each other and with the PFLP faction of the PLO in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing and personal injury including the terrorist shooting and the terrorist bombing which harmed plaintiffs.

156.   As a result of the terrorist shooting and terrorist bombing caused, resulting from and facilitated by defendants' conspiracy with the PFLP faction of the PLO, plaintiffs suffered the damages enumerated herein.

157.   The claims of plaintiffs MICHAEL THALER and ISAAC THALER under this Count are governed by civil conspiracy principles recognized under Florida law. The claims of all the other plaintiffs under this Count are governed by civil conspiracy principles recognized under the law of the District of Columbia and under Israeli law.

158.   Civil conspiracy principles are recognized in Israeli law in §12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act

or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

159. Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

**TENTH COUNT**
**AGAINST ALL DEFENDANTS**
**ON BEHALF OF ALL PLAINTIFFS**
**AIDING AND ABETTING**
**(Under the Law of the District of Columbia, the Law of the State of Florida**
**and the Law of the State of Israel)**

160. The preceding paragraphs are incorporated by reference as though fully set forth herein.

161. Defendants provided the PFLP faction of the PLO with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the terrorist shooting and the terrorist bombing which harmed the plaintiffs.

162. As a result of the terrorist shooting and terrorist bombing caused, resulting from and facilitated by defendants' provision of material support and resources and other acts of aiding and abetting, plaintiffs suffered the damages enumerated herein.

163. The claims of plaintiffs MICHAEL THALER and ISAAC THALER under this Count are governed by aiding and abetting principles recognized under Florida law. The claims of all the other plaintiffs under this Count are governed by aiding and abetting principles recognized under the law of the District of Columbia and under Israeli law.

164.    Aiding and abetting principles are recognized in Israeli law in §12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

165.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

## ELEVENTH COUNT
## AGAINST ALL DEFENDANTS
## ON BEHALF OF ALL PLAINTIFFS
## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR
### (Under the Law of the District of Columbia, the Law of the State of Florida and the Law of the State of Israel)

166.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

167.    At all relevant times, defendant Hueiji was an agent, officer and employee of defendants Syria, SMD and SAFID acting within the scope of his agency, office and employment. Defendant Hueiji engaged in the actions described herein within the scope of his agency, office and employment and in furtherance of the interests of defendants Syria, SMD and SAFID.

168.    At all relevant times, defendants Tlass, Khalil, Shawkat and Douba were agents, officers and employees of defendants Syria, SMD and SMI acting within the scope of their agency, office and employment. Defendants Tlass, Khalil, Shawkat and Douba engaged in the actions described herein within the scope of their agency, office and employment and in furtherance of the interests of defendants Syria, SMD and SMI.

169.    At all relevant times, defendants John Does 1-20 were agents, officers and employees of defendant Syria acting within the scope of their agency, office and employment. Defendants John Does 1-20 engaged in the actions described herein within the scope of their agency, office and employment and in furtherance of the interests of defendant Syria.

170.    Defendants Syria, SMD, SMI and SAFID authorized, ratified and/or condoned the actions described herein of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and John Does 1-20.

171.    Therefore, defendants Syria, SMD, SMI and SAFID are vicariously liable for the acts of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and John Does 1-20.

172.    At all relevant times, defendants SMD, SMI and SAFID were agents and/or offices of defendant Syria acting within the scope of their agency and/or office. Defendants SMD, SMI and SAFID engaged in the acts described herein within the scope of their agency and/or office and to further the interest of defendant Syria.

173.    Defendant Syria authorized, ratified and/or condoned the conduct of defendants SMD, SMI and SAFID.

174.    Therefore, defendant Syria is vicariously liable for the acts of defendants SMD, SMI and SAFID.

175.    The claims of plaintiffs MICHAEL THALER and ISAAC THALER under this Count are governed by respondeat superior and vicarious liability principles recognized under Florida law. The claims of all the other plaintiffs under this Count are governed by respondeat superior and vicarious liability principles recognized under the law of the District of Columbia and under Israeli law.

176.    Respondeat superior and vicarious liability principles are recognized in Israeli law in §§ 13 and 14 of the CWO, which provide that an employer is liable for an act or omission committed by his employee, if the employer authorized or ratified the act or omission, or if the employee committed the act or omission in the course of his employment, and that a person who employs an agent for the performance of an act or a category of acts is liable for everything the agent does in the performance of that act or category of acts, and for the manner in which the agent performs them.

177.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

**WHEREFORE**, plaintiffs demand judgment against the defendants jointly and severally, as to each of the above counts and causes of action, as follows:

A.      Compensatory damages against all defendants, jointly and severally, in the amount of $300,000,000.00 (THREE HUNDRED MILLION DOLLARS);

B.      Punitive damages against all defendants, jointly and severally, in the amount of $1,000,000,000.00 (ONE BILLION DOLLARS);

C.      Reasonable costs and expenses;

D.      Reasonable attorneys' fees;

E.      Such further relief as the Court finds just and equitable.


March 20, 2008

Plaintiffs, by their Attorney,

_____
David J. Strachman
D.C. Bar No. D00210
McIntyre, Tate & Lynch LLP
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlhlaw.com

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Shabtai Scott Sahatsky, Jo Anne Shatsky, Yoseph Shatsky, Miriam Shatsky, David Shatsky, Tzippora Shatsky, Sara Shatsky, Michael Thaler, Ginette Lando Thaler, Zvi Thaler, Leor Thaler, Isaac Thaler, Hillel Trattner, Ronit Trattner, Aron S. Trattner, Shelley Trattner, Steven Braun, Chana Friedman, Miriam Friedman, Bella Friedman, Miriam Friedman, Ilan Friedman, Yehiel Friedman, Zvi Friedman, Miriam Mendelson Miller, Yair Mendelson and Elizabeth Har Zahav.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

David J. Strachman, Esq.
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700

## DEFENDANTS

The Syrian Arab Republic, The Syrian Ministry Of Defense, Mustafa Tlass, Syrian Military Intelligence (aka Aka Shu'bat Al-Mukhabarat Al-'Askariyya), Hassan Khalil, Assef Shawkat, Ali Douba, The Syrian Air Force Intelligence Directorate, Ibrahim Hueiji, and John Does 1-20.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
  Plaintiff

● 3 Federal Question
  (U.S. Government Not a Party)

○ 2 U.S. Government
  Defendant

○ 4 Diversity
  (Indicate Citizenship of
  Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

● **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/*<br>*2255* | ○ H. *Employment*<br>*Discrimination* | ○ I. *FOIA/PRIVACY*<br>*ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA*<br>*(non-employment)* | ○ L. *Other Civil Rights*<br>*(non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original
Proceeding

○ 2 Removed
from State
Court

○ 3 Remanded from
Appellate Court

○ 4 Reinstated
or Reopened

○ 5 Transferred from
another district
(specify)

○ 6 Multi district
Litigation

○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C.1605A - Antiterrorism personal injury

**VII. REQUESTED IN**
**COMPLAINT**

CHECK IF THIS IS A CLASS
ACTION UNDER F.R.C.P. 23

DEMAND $ _____
JURY DEMAND:

Check YES only if demanded in complaint
YES ☐   NO ☐

**VIII. RELATED CASE(S)**
**IF ANY**

(See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE  3/26/08   SIGNATURE OF ATTORNEY OF RECORD

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.