**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHABTAI SCOTT SHATSKY, *et al*.,

Plaintiffs,

v.

THE SYRIAN ARAB REPUBLIC, *et al*.,

Defendants.

Civil Action No. 08-cv-00496-RJL

**DECLARATION OF DR. BOAZ SHNOOR**

**a. Professional Background**

1. I am a Senior Lecturer at the Academic Center for Science and Law (Shaarei Mishpat College), in Hod Hasharon, Israel, and have been a faculty member there since 2019. Before that I was a faculty member at the Academic Center of Law and Business, in Ramat Gan, Israel. During the last two decades I also held positions teaching law at the Faculty of Law of the Hebrew University in Jerusalem, and at the College of Management (Academic Studies Division) in Rishon Letzion, Israel. During the academic year 2010-2011, I was a visiting scholar at Cornell University's law school.

2. My teaching and research fields focus primarily on Israeli tort law, libel law, environmental law, psychological analysis of law, and honor litigation in an historical context. I am the author of the book Toxic Torts (2011, Sacher Institute) (Hebrew), co-author of the book Libel Law - De Lege Lata and De Lege Ferenda (2005, Sacher Institute; 2nd. Edition, 2019, Sacher Institute) (Hebrew), and have authored and co-authored numerous other academic and professional papers on Israeli tort law and other legal topics.

3. I hold LL.D, LL.M and LL.B degrees from the Hebrew University. My doctoral dissertation dealt with toxic torts. I am a member of the Israeli Bar and licensed to practice law in the State of Israel. A copy of my current curriculum vitae is attached hereto.

**b. Purpose of this Declaration**

4. This Declaration was prepared at the request of counsel for the plaintiffs in the above-captioned action. The purpose of this Declaration is to provide my opinion as to whether plaintiffs Ginette Thaler and Ronit Trattner ("the Israeli Plaintiffs") have viable claims against the Defendant, the Syrian Arab Republic ("Syria" or "the Defendant") under Israeli tort law.

5. The bases for my opinion as set forth herein are my professional and academic legal studies, research, teaching and publishing over the course of many years, as well as the statutes, cases and authorities cited in this Declaration.

6. In preparing this declaration I have reviewed the Complaint in this case dated March 21, 2008, the Declaration of Dr. Matthew Levitt dated September 15, 2020 (docket entry 50-3), the Declaration of Dr. Jonathan Spyer dated September 15, 2020 (docket entry 50-2), and the Declarations of Lior Thaler and Hillel Trattner, both dated February 5, 2023.

7. All cases cited herein, unless otherwise noted, are decisions of the Supreme Court of Israel, which is the highest court in the State of Israel.

**c. Opinion**

8. As correctly noted in the Complaint, causes of action in tort in Israeli law are codified in the **Civil Wrongs Ordinance (New Version) - 1968**, (hereinafter "CWO").

9. The Complaint asserts several theories of liability under the CWO:

A. Assault/Battery pursuant to CWO Article 23. Complaint at ¶¶ 100-115.

B. Negligence pursuant to CWO Articles 35-36. *Id*. at ¶¶ 143-153.

C. Aiding and Abetting/Conspiracy under CWO Article 12. *Id*. at ¶¶ 154-165.

D. Vicarious Liability under CWO Articles 13-14. *Id*. at ¶¶ 166-177.

10. In my professional expert opinion, to a reasonable degree of legal certainty, the Defendant is liable in tort to the Israeli Plaintiffs under Israeli law on the following bases:

A. Direct liability for Negligence: Supplying aid, support and assistance to terrorist organizations is a careless activity, and a reasonable defendant would foresee that such actions might result in terrorist attacks like the 2002 bombing in which the Israeli Plaintiffs were harmed. Therefore, such actions result in the Defendant's direct civil liability for the 2002 bombing, under a theory of "Negligence" pursuant to Articles 35-36 of the CWO.

B. Vicarious Liability: the Defendant is also vicariously liable under Article 14 of the CWO for the actions of the PFLP which committed the bombing. The PFLP's commission of the bombing amounts both to Negligence under Articles 35-36 of the CWO, and Battery and Assault under Article 23 of the CWO.

C. Aiding and Abetting/Civil Conspiracy: Given the aid, support and assistance supplied by Defendant to the PFLP, Defendant's liability also arises under Article 12 of the CWO.

11. I first address Defendant's direct liability for "Negligence." As the Defendant's liability is also derived from the liability of the PFLP itself, I will then analyze the PFLP's direct liability for the bombing under the torts of negligence, battery and assault, and the Defendant's vicarious liability for aiding and conspiring with the PFLP in its tortious actions.

**d. <u>The Tort of Negligence in Israeli Law</u>**

12. The tort of "negligence" under Israeli law refers to a much wider range of tortious conduct than under American law. Under Articles 35-36 of the Israeli CWO, "negligence" includes unreasonable conduct that causes foreseeable harm, even where the conduct is intentional. *See e.g.* CA 4486/11 *Doe v. Doe* ¶ 10 (7.15.2013) (the Israeli Supreme Court notes the well-established rule that the tort of negligence includes intentional behavior); CA 2034/98 *Amin v. Amin* PD 53(5) 69, 81 (1999) (A widowed father who, after being re-married, intentionally refused to take care of his children for years, was held liable in negligence for the harm caused to them). Thus, even intentional tortfeasors are routinely held civilly liable in Israel under a theory of "negligence."

13. The tort of negligence provided for in the CWO consists of four elements: a duty of care; breach of a duty of care (i.e. carelessness); proximate cause (sometimes divided into cause-in-fact and legal causation); and harm. *See e.g.*, CA 243/83 *City of Jerusalem v. Gordon*, P.D. 39(1) 113, 128 (1985) (The Jerusalem Municipality was held liable in negligence for the negligent false imprisonment of Plaintiff). *See also Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 58 (D.D.C. 2010) (applying Israeli law, enumerating the elements above, and finding Iran liable for a terrorist attack under a negligence theory).

**e. <u>The Defendant is Primarily Liable in Negligence</u>**

14. Under Israeli law, Syria is directly liable in negligence for the 2002 bombing. All of the elements of negligence are satisfied here.

*<u>Duty of Care</u>*

15. The duty of care element is sometimes subdivided into the conceptual duty of care and the concrete duty of care (CA 1167/11 *Doe v. Doe* (11.18.2013)) (A kibbutz owes a conceptual duty of care [but not a concrete one, due to the circumstances of the case] to the children residing

within the kibbutz, to protect them against sexual assault by other minors living in the kibbutz). However, it has been said repeatedly by the Israeli Supreme Court that a conceptual duty of care always, or almost always, exists, (CA 915/91 *Levi v. The Authority for Regulating the Insurance Market* P.D. 48(3) 45, 67 (the State's insurance authority owes a conceptual duty of care to an insured person who could not collect his insurance money after an accident, due to his insurance company's liquidation); CA 10078/03 *Shtil v. The State of Israel* (3.19.2007) (the State owes a duty of care to a farmer to provide water that is suited to his crops), and therefore it has been suggested to abolish this requirement altogether. Moreover, Israeli courts analyze this element by using policy considerations and therefore there is no separate need to establish proof on this point.

16. Under the conceptual duty of care the court asks itself whether, in relation to the *type* of persons to which the defendant belongs, the *type* of plaintiffs to which the plaintiff belongs, the *type* of activity the defendant did, and the *type* of harm which was caused, the reasonable person could and should have foreseen the *type* of harm (CA 243/83 *City of Jerusalem v. Gordon*, P.D. 39(1) 113, 129 (1985)). Under this element, the court emphasizes general policy considerations, and disregards the details of the case at bar (CA 1167/11 *Doe v. Doe* (11.18.2013)).

17. On the other hand, under the concrete duty of care the court delves into the details of the case and asks whether the specific defendant could and should have reasonably foreseen the specific harm which was caused to the specific plaintiff. Here the court will emphasize pragmatic and fact-specific considerations (C.A. 3521/11 *Vagner v. Abadi* ¶ 6, 8 (6.22.2014).

18. It is widely accepted in Israeli tort law that a duty of care (both conceptual and concrete) is presumed to exist whenever a reasonable person could have foreseen that the negligent conduct of the defendant could have cause harm of the type alleged. (CA 2144/13 *Estate of Mentin*

*v. The Palestinian Authority* § 58 (6.12.2017); *City of Jerusalem*, *id*. at 131-132). CWO § 36 provides that the duty of care identified in CWO § 35 is owed to all persons to the extent that a reasonable person would have foreseen under the same circumstances that, in the ordinary course of events, the victim was likely to be injured by the conduct of the tortfeasor.

19. It is common knowledge (and the declarations of plaintiffs' liability witnesses, Dr. Levitt and Dr. Spyer attest), that the PFLP is a terrorist organization that embraces violence in practice and as a guiding principle. Therefore, any government that funds, arms, trains and otherwise helps the PFLP, and encourages it to commit terrorist activities, can and should reasonably foresee that terrorist actions which will cause harm to people are foreseeable results. Therefore, a conceptual duty of care between the Defendant and the Plaintiffs does exist.

20. Moreover, given the specific facts of the case it seems that a concrete duty of care exists as well. Syria could and should have seen that the help that is provided to the PFLP would likely result in murder and personal injury to civilians in Israel. Therefore, in my expert opinion, both conceptual and concrete duties of care exist in this case between the Defendant and the Plaintiffs.

21. The duty of care is not limited to direct victims. A tortfeasor has a duty of care towards secondary victims who were not harmed directly, if their harms, including non-pecuniary damage, are the result of the damage caused to the direct victims. This duty of care towards secondary victims is subject to four conditions (CA 444/87 *AlSuha v. Dahan*, P.D. 44(3) 397 (1990)):

**a.** The secondary victim is a first degree family member (spouse, sibling, parent or child) of the principal victim;

**b.** The secondary victim witnessed the event (directly or through the media), or its consequences (e.g. witnessing the principal victim in hospital, or living with him following

the event) *ibid*, at p. 435; C.A. 9466/05 *Shwaeki v. The State of Israel*, at ¶ 18 of VCJ *Rivlin*; LCA 5803/95 *Zion v. Zach* 51(2) P.D. 267, 270-275. For example in *AlSuha*, at ¶ 21, the principal victims were injured in car accidents. The secondary victims did not witness the accident itself but saw the principal victims in the hospital and were next to them until their death, which satisfied the court. The court stressed that as long as the damage was foreseeable, the method by which the secondary victim learned of the principal harm – witnessing the incident, hearing about it from someone else, and seeing it on the television, were some of the examples the court gave - is irrelevant (*See also* C.A. 9159/08 *Illit Insurance v. Goroditzki*, (12.16.2010) (A mother who was not present at the time of her daughter's accident wad compensated for the losses resulting from her emotional and psychological harm; C.C. (Jerusalem District Court) 9135-07 *Mashiach v. PA* ¶ ¶ 209-217 (9.17.2018) (The principal victim suffered PTSD following a suicide terrorist attack he witnessed. His wife and children suffered emotional harm after seeing him at the hospital and living with him. The court stated that either of the two forms of exposure to the primary victim would have been enough to allow the wife and children to be eligible for compensation.). It should be noted that *AlSuha*, which was the first case in Israel to compensate secondary victims for their harm, is still cited as the leading case. In later cases the courts have stressed that they tend to be lenient with regard to this (and the following) conditions even more than allowed by the *Alsuha* court itself (C.A. 1597/15 *Doe v. Doe* ¶ 9 (1/20/2016)).

**c.** Time and space proximity between the two harms. As the Supreme Court stated "This requirement was interpreted in a flexible way; it was ruled that even harm that occurred far away from the prime scene, after a long time, or as a result of continuing exposure and not immediate shock, might be compensable." *Shweki,* ¶ 18 of VCJ Rivlin. *See also* C.A. 1597/15 *Doe v. Doe* ¶ 9 (1/20/2016). Indeed, to the best of my knowledge, the only case in which the

Supreme Court rejected a claim based on the fact that the second or third condition were not met, involved a case in which a mother sued for the harm she suffered after her twenty-five year old daughter told her that twenty years earlier the daughter's uncle had molested and raped her. In this case the court said that a twenty year lapse between the primary and the secondary harms renders the ensuing emotional harm unforeseeable (C.A. 1597/15 *Doe. V. Doe* (1.20.2016)).

**d.** The secondary victim should suffer severe harm: mental illness or disturbance (or physical harm) which significantly interferes with daily function (L.C.A. 217/16 *Estate of Roe v. Clal Insurance company* ¶ 16 (2.14.2016)).

22. The Declarations of Lior Thaler and Hillel Trattner indicate that these requirements are satisfied, or can be satisfied at the damages stage of the case, in respect to the Israeli Plaintiffs, Ginette Thaler and Ronit Trattner. Ms. Thaler is the mother of both Rachel Thaler, who was killed in the bombing, and Lior Thaler, who was seriously injured in the bombing, and Ms. Trattner is the wife of Hillel Trattner, who was severely wounded in the bombing. The Declarations of Lior Thaler and Hillel Trattner state that Ms. Thaler and Ms. Trattner suffered serious psychological and emotional harm as a result of the death and injury of their immediate family members in the bombing. If this harm is substantiated at the damages stage, then Israeli law will view Ms. Thaler and Ms. Trattner as secondary victims entitled to compensation for their damages.

*Breach*

23. Conduct that demonstrates a lack of care constitutes a breach of the duty of care. Syria's activities were clearly careless (in fact, they were intentional) and were a breach of Syria's duty of care. As stated in the declarations of Dr. Levitt (at pp. 34-39) and Dr. Spyer (at ¶¶ 21-37),

Syria provided wide-ranging material support to the PFLP for the planning and execution of terrorist attacks, thereby enabling it to carry out countless attacks and murders. These actions without a doubt are considered a breach of the Defendant's duty of care, under Israeli law.

*Causation*

24. Under Israeli law, the causation element of negligence includes both causation in fact and legal causation (proximate cause).

25. Cause in fact is generally determined in Israel according to the "but for" test (CA 145/80 *Va'aknin v. The City of Beit Shemesh*, P.D. 37(1) 113, 144 (a teenager who was severely injured after diving into a pool sued the pool for lack of signs prohibiting such diving)). However, in cases where it is clear that the defendant's actions increased the chances that the plaintiff will suffer harm, the burden shifts to the defendant to show that its conduct was not the cause of the injury (LFH 6714/02 *Shimon v. Kupat Holim* ¶ 6 (4.7.2003); CA 3108/91 *Reivi v. Veigel* P.D. 47(2) 497, 518 (1993).[1] In this case, it is clear from Plaintiffs' liability experts that Syria's provision of material support to the PFLP was very extensive, and increased the likelihood of the attack, and appears to easily have been sufficient to enable the attack. *See* Levitt, pp. 34-39; Spyer, ¶¶ 21-37. Given these circumstances, Israeli law will impose negligence liability on Syria, unless Syria were to prove that its conduct was not the cause of the bombing at issue in this case. Since Syria has not appeared in the case and sought to do so, cause-in-fact is satisfied.

26. There are three different tests for determining legal causation: proximity, zone of risk and common sense (CA 2028/99 *Pe'er v. Silovat Inc.* P.D. 55(3) 493, 500 (An engineer was held liable in negligence for the harm caused when a building he designed collapsed, his plans

---

[1] This burden-shifting is not a rule of evidence law, but of substantive tort law.

were not fully followed, because of his failure to adequately warn the owners of this risk)). However, the main fact that determines the result of all three tests is foreseeability – the ability of the reasonable person to foresee the harm (CA 8199/01 *Miro v. Miro*, P.D. 57(2) 785, 791-792 (an off-duty policeman negligently brought a loaded gun to a party. A family member, thinking it was unloaded, grabbed it and shot another family member. The policeman and the police force were held liable)). Once the reasonable person could have foreseen that a harm of the kind that happened could have happened, the legal causation requirement is met. Here, Syria not only foresaw but actually desired bombings of this type, therefore the proximate cause element is satisfied.

27. Therefore, it is my professional opinion to a reasonable degree of legal certainty, that Syria is liable in negligence under Israeli law for the 2002 bombing and all the harms arising therefrom.

**e. <u>The Defendant Is Also Secondarily Liable for the Bombing</u>**

28. In addition to its direct negligence liability for the bombing, discussed above, Syria is secondarily liable for bombing.

29. There is obviously no question that PFLP itself is civilly liable for the bombing. The bombing was carried out by the PFLP intentionally, and therefore meets all the elements of Negligence discussed above (a duty of care; breach of a duty of care; causation; and harm).

30. Additionally (and unsurprisingly) the bombing also constitutes a battery under Article 23 of the CWO. Under Israeli law, in order to succeed in an action for battery, a plaintiff has the burden of proving that the defendant (a) knowingly (b) used force – either directly or indirectly (c) against the body of another person; (d) without the consent of that person. Clearly, the bombing meets these requirements and so constituted a battery under Article 23 of the CWO.

31. Syria is secondarily liable for the PFLP's primarily liability for the bombing, on two bases:

***Vicarious Liability***

32. Article 14 of the CWO provides that a principal is liable for any act done by an agent in the process of fulfilling his duties as an agent. The liability of the principal is strict and it does not matter whether he intended the agent to perform the tort or not, whether he knew about the possibility of the happening of the tort or not, or whether he was negligent or not in hiring the agent. Under Israeli law, the mere fact that the agent was indeed the principal's agent is sufficient to deem the principal liable for any tort done by the agent in the course of fulfilling the agency (CA 502/78 *The State of Israel v. Nissim*, PD 35(4) 748 (1981) (a principal was held liable for a car accident that was caused by the agent's negligent driving)).

33. The meaning of agency under Israeli law has been somewhat vague (C.A. 675/75 *Middle East Pipes v. Shaebi*, PD 31(3) 225, 229 (1977)). The common formulation is that a person becomes an agent if he substitutes for the principal in fulfilling a task; if the agent is the "long arm" of the principal (*Nissim*, at 755; C.A. 273/80 *Medinah v. Cohen* PD 37(2) 29, 38 (1983)).

34. According to Dr. Levitt and Dr. Spyer, Syria used the PFLP as its proxy, to commit terrorist acts aimed at Israel, that Syria did not or could not carry out itself. *See* Levitt, pp. 34-39; Spyer, ¶¶ 21-37, 40. Therefore, PFLP was the agent of the Defendant in carrying out terrorist attacks, such as the 2002 bombing.

35. Thus, Syria is vicariously liable for the 2002 bombing, under CWO Article 14.

***Aiding and Abetting and Civil Conspiracy***

36. Article 12 of the CWO states that anyone who helps another or encourages him to perform a civil wrong, or takes part in committing it, is liable as if he committed the wrong himself.

37. Israeli courts have ruled that in order for a person to be liable according to this Article, a person should either aid the principal actor in performing a civil wrong (e.g. by providing the means to commit the civil wrong or by otherwise providing needed help) or encourage him to perform it, foreseeing that the principal actor is about to commit the wrong, even if the aider did not intend for the principal actor to commit a civil wrong (*Ben Shalom*, at ¶¶ 64-72; CA 8828/20 *Palestinian Authority v. Doe* (6/6/2022); CA2362/19 *Does v. Palestinian Authority* ¶ 12 (4.10.2022); CA 6871/99 *Rinat v. Rom*, P.D. 56(4) 72, 81-82 (2002).

38. Moreover, in CA 5977/07 *Hebrew University v. Schocken Publishing House Ltd*., (6.12.2011) it was held that imposing liability under § 12 does not require satisfying the "but for" causation test. Rather, as long as the defendant's actions significantly contributed to the tortious actions of the direct tortfeasor or to the chances of their success, then liability can be imposed. This is especially true, where the defendant gained from the tortious actions of the direct tortfeasor, the defendant will be liable for them under CWO § 12. (CA 4691/18 *Su`aed v. Tbash* (8.25.2021); CA 3024/10 *Wiener v. Moyal* (4.2.2013).

39. In the instant case, it is clear from the facts as described by Dr. Levitt and Dr. Spyer, both that Syria did in fact provide the PFLP with the means necessary to commit terrorist attacks, such as the 2002 bombing, and that Syria deemed such attacks as beneficial to its interests. It is further clear that Syria assisted PFLP knowing it was foreseeable that this would result in PFLP carrying out terrorist attacks against innocent civilians, causing harm to them and their family members (such as the Israeli Plaintiffs here).

40. Therefore it is my expert opinion to a reasonable degree of legal certainty, that the Defendant is also liable under Article 12 of the CWO for aiding and abetting the bombing, and for conspiring with the PFLP to carry out bombings of this type.

**f. Conclusion**

41. For the reasons above, it is my opinion to a reasonable degree of legal certainty that under applicable Israeli law as applied to the facts of this case, the Defendant is both directly and secondarily liable for the 2002 bombing and the injuries caused to the Israeli Plaintiffs thereby.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: February 20, 2023

B. Shnoor

Dr. Boaz Shnoor

# CURRICULUM VITAE – BOAZ SHNOOR

## 1. Higher Education

**Undergraduate and Graduate Studies**

| Period of Study | Name of Institution and Department | Degree | Year of Approval of Degree |
|---|---|---|---|
| 2015 – 2021 | Open University | Psychology (B.A.) | 2021 |
| 1997-2004 | Hebrew University Law School | LL.D. | 2005 |
| 1996-1999 | Hebrew University Law School | LL.M. (part of accelerated LL.D. program) | 1999 |
| 1991-1995 | Hebrew University Law School | LL.B. (magna cum laude) | 1995 |

## 2. Academic Ranks and Tenure in Institutes of Higher Education

| Dates | Name of Institution and Department | Rank/Position |
|---|---|---|
| 2019- | The Academic Center for Law and Science (Sha'arei Mishpat College), Hod Hasharon | Senior Lecturer |
| 2013-2019 | Law faculty, Academic Center of Law and Business, Ramat Gan | Senior Lecturer |
| 2010-2011 | Cornell University Law School | Visiting Scholar |
| 2007-2008<br>2018-2019 | The Academic Center for Law and Science (Sha'arei Mishpat College), Hod Hasharon | Adjunct Lecturer |

| | | |
|---|---|---|
| 2004-2013 | Law faculty, Academic Center of Law and Business, Ramat Gan | Lecturer |
| 2003-2004 | Law faculty, Academic Center of Law and Business, Ramat Gan | Adjunct Lecturer |
| 2002-2017 | School of Law, the College of Management Academic Studies, Rishon LeZion | Adjunct Lecturer |
| 2002-2016<br>2021-2022 | Law faculty, Hebrew University, Jerusalem | Adjunct Lecturer |

### 3. Offices in Academic Administration

2022 - Head of Teaching Committee, The Academic Center for Law and Science (Sha'arei Mishpat College)

2020 - Member of the Institutional Ethical Review Board, The Academic Center for Law and Science (Sha'arei Mishpat College)

2019 - 2022 Head of the Research Authority, The Academic Center for Law and Science (Sha'arei Mishpat College)

2013 - 2018 Chairperson, Institutional Ethical Review Board, Academic Center of Law and Business

2011 – 2018 Chairperson, Students' Disciplinary Appeals Board, Academic Center of Law and Business

2006 – 2010 Chairperson, Students' Disciplinary Board, Academic Center of Law and Business

2005 - 2013 Founder and Academic Supervisor of the Environmental Law Clinic, Academic Center of Law and Business

### 4. Scholarly Positions and Activities outside the Institution

#### a. Membership in Scientific Editorial Boards

2019 - 2021 Co-Editor, The Oñati Socio-Legal Series, ‘Too Much Litigation?’ issue

2017-2018 Guest Co-Editor, the International Journal of the Legal Profession

2016-2017 Co-Editor, The Oñati Socio-Legal Series, 'Too Few Judges: Regulating the Number of Judges in Society' issue

1993-1994 Co-Editor in Chief "Mishpatim" (Hebrew University Law Review)

1992–1993 Member of the Editorial Board "Mishpatim" (Hebrew University Law Review)

**b. <u>Reviewing Articles for Law Reviews</u>**

2021 "Hamishpat" - the College of Management, Academic Studies Law journal

2020 "Mishpat Va`Asakim" – IDC Law Review

2020 "Moznei Mishpat" – Netanya Law Review

2020 "Mishpatim online" - Hebrew University Online Law Journal

2019 "Mishpatim" - Hebrew University Law Review

2019 "Mishpat Va`Asakim" – IDC Law Review

2018 "Mishpatim online" - Hebrew University Online Law Journal

2014 "Mishpatim" - Hebrew University Law Review (two articles)

2012 "Mishpatim" - Hebrew University Law Review

2012 "Mehkarei Mishpat" - Bar Ilan Law Studies

2011 "Alei Mishpat" - Academic Center of Law and Business Law Review

2010 "HaMishpat" - the College of Management, Academic Studies Law journal

2009 "Hukim" – Journal on Legislation

2008 "Din U`Dvarim" - Haifa University Law Review

2008 "Alei Mishpat" - Academic Center of Law and Business Law Review

2007 "Hapraklit" - Israeli Bar Review

2007 "Mishpatim" - Hebrew University Law Review

2006 "Hapraklit" - Israeli Bar Review

**c. <u>Reviewing Dissertations, Theses and Books</u>**

2019 Reviewing a Proposal for Master`s Thesis – Bar Ilan University Law Faculty

2018 Reviewing a Doctoral Dissertation – The Hebrew University Law Faculty

2015 Reviewing a book - the Harry Sacher Institute for Legislative Research and Comparative Law

**d. <u>Public Committees</u>**

2015-2016 The Ministry of Health Public Committee for the Regulation of Procedures regarding Living Organ Donors – member

2013 The Public Commission on Age as a Criteria for Receiving Organ Donations - member

## 5. Participation in Scholarly Conferences

### a. Active Participation

**Conferences Abroad**

| Date | Name of Conference | Place of Conference | Subject of Lecture/Discussion | Role |
|---|---|---|---|---|
| June 2019 | Workshop on Too Much Litigation?: Facts, Reasons, Consequences, and Solutions | Oñati, Spain | Don Quixote de la Corte: Serial Litigants, Emotions, and Access to Justice (with Eyal Katvan) | Speaker |
| June 2016 | Workshop on Too Few Judges: Regulating the Number of Judges in Society | Oñati, Spain | Judges' Precious Time: Let's talk about it (with Eyal Katvan) | Speaker |
| July 2015 | Workshop on Consumer Redress When Lawyers Are Negligent | Oñati, Spain | Informed Consent to Legal Treatment (with Eyal Katvan) | Speaker |
| May 2014 | How Objective Can Judges Be: Legal Rule, Evidence, Narratives, Society Conference | Antwerp | Courts as the Creators of Legal Rules :The Case, the Judge, the Court and the State | Speaker |
| November 2011 | The 6th Annual Conference on Empirical Legal Studies | Chicago | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine | Speaker |
| June 2011 | Association for Israel Studies | Boston | Terms of Betrayal – Legal and behavioral aspects of ringworm | Speaker |

| | | | | |
|---|---|---|---|---|
| | | | treatment in Israel (with Eyal Katvan) | |
| July 2006 | 17th Congress of the International Academy of Comparative Law | Utrecht, the Netherlands | Pure Economic Loss in Israel (with Tamar Gidron) | Speaker |

Conferences in Israel

| Date | Name of Conference | Place of Conference | Subject of Lecture/Discussion | Role |
|---|---|---|---|---|
| June 2016 | Research Workshop of the Israel Science Foundation - Honor in a Changing Society | Ramat-Gan | Honor in Informal Courts in Mandatory Palestine (with Eyal Katvan) | Speaker |
| June 2016 | 32nd annual Conference of the Association for Israel Studies | Jerusalem | Eastern or Western 'Kavod'? Honor in Informal Courts in Mandatory Palestine" (with Eyal Katvan) | Speaker |
| October 2015 | The Association for Law & History Annual Conference | Jerusalem | \`But Your Honor, he Started it\`: Honor and the Regulation of Emotions in Informal Courts in Mandatory Palestine (with Eyal Katvan) | Speaker |
| April 2015 | Conference on Lawyers' Legal Ethics and Professional Responsibility – Hamishpat Law Review | Tel-Aviv | Judges' Perceptions of Counsels' Behavior in Court | Speaker |
| October 2013 | The Law and History Association Annual conference | Jerusalem | The History of the Struggle between Freedom of Speech and Honor – Legislation vs. Adjudication (Heb.) | Speaker |

| | | | | |
|---|---|---|---|---|
| December 2012 | The Law and Society Conference | Ramat-Gan | Cases, Judges, or Politics – What makes American Courts Change Tort Law? (Heb.) | Speaker |
| October 2012 | The Law and History Association Annual conference | Jerusalem | Archives with Honor (Heb.) (with Eyal Katvan) | Speaker |
| October 2012 | The Legal Year Conference | Haifa | Libel Law in Israel 2012 (Heb.) | Speaker |
| May 2012 | 3rd Annual Conference of the Israeli Association of Private Law | Ramat-Gan | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine (Heb.) | Speaker |
| May 2012 | Intermediary Liability in the Digital Age | Haifa | Intermediaries' Liability for Libel - Lessons from Past Developments in Israeli Courts and the Knesset | Speaker |
| April 2012 | Regulation of Off-Shore Drilling Conference | Tel-Aviv | Torts as Regulation of Off-Shore Drilling (Heb.) | Speaker |
| December 2011 | Annual Conference of the Israeli Association of Law and Society | Ramat-Gan | A Community with Its Own Dignity (Heb.) (with Eyal Katvan) | Speaker |
| November 2008 | Between Criminal and Civil | Ramat-Gan | Punitive Damages, Compensation for Non-pecuniary Harm and Compensation without Proof of Harm (Heb.) | Speaker |
| June 2008 | Conference on Economic Incentives in Environmental Law | Ramat-Gan | Economic Incentives and Pollution: Goal and Methods (Heb.) | Speaker |

| | | | | |
|---|---|---|---|---|
| May 2008 | Evidence Law | Haifa | Evidence Law and Uncertainty in Tort Law (Heb.) | Speaker |
| March 2007 | Libel Law | Jerusalem | Libel law – Theory and Reality (Heb.) | Speaker, part of panel |
| May 2006 | Conference on Animal Rights and Biodiversity | Ramat-Gan | Pets, Torts and Animal Rights (Heb.) | Speaker |
| June 2005 | 8th International Conference of the Israel Society for Ecology and Environmental Quality Sciences - Living with Global Change: Challenges in Environmental Sciences | Rehovot | Environmental Law: From Public to Private Enforcement | speaker |
| December 2003 | The 13th annual conference of the Rationality Center of the Hebrew University | Ein Gedi | The Causal Connection in the Shamgar Committee Report on the Kishon River (Heb.) | speaker |
| December 2002 | Annual convention of the Israel Society for Ecology and Environment | Tel-Aviv | Causation in Environmental Torts (Heb.) | speaker |

b. **<u>Organization of Conferences or Sessions</u>**

| **Date** | **Name of Conference** | **Place of Conference** | **Subject of Conference/ Role at Conference/ Comments** | **Role** |
|---|---|---|---|---|
| June 2019 | Workshop on Too Much Litigation?: Facts, Reasons, Consequences, and Solutions | Oñati, Spain | The litigants in Courts | Coordinator (Member of the scientific board) |

| | | | | |
|---|---|---|---|---|
| June 2016 | Research Workshop of the Israel Science Foundation - Honor in a Changing Society | Ramat-Gan | Honor in a Changing Society | Member of the scientific board, member of the organizing committee |
| June 2016 | Workshop on Too Few Judges: Regulating the Number of Judges in Society | Oñati, Spain | Regulation of the Number of Judges in Society | Coordinator (Member of the scientific board) |
| May 2006 | Conference on Animal Rights and Biodiversity | Ramat-Gan | Animal rights and Biodiversity | Organizer |

### 6. <u>Invited Lectures\ Colloquium Talks</u>

| **Date** | **Place of Lecture** | **Name of Forum** | **Presentation/Comments** |
|---|---|---|---|
| November 2021 | Sha`arei Mishpat – The Academic College of Law and Science | Israeli bar – Libel and Privacy Law | Defenses in Defamation |
| October 2021 | Peres Academic Center, Rehovot | Law school, Faculty Seminar | Critique on Omer Aloni, "The League of Nations and the Protection of the Environment" |
| October 2020 | Zoom | Jewish History and Emotions on-line workgroup | "Honorably – Theodor Herzl" (With Eyal Katvan and Meron M. Piotrkowski) |
| March 2018 | Tel-Aviv – Jaffa Civil Court | Judges` Workshop | Libel and the Judicial Process |
| June 2017 | Tel-Aviv University | Environmental Law Program | Substance and Practice in Mass Environmental Torts |
| November 2016 | Tel-Aviv University | Environmental Clinic Workshop | Toxic Torts |
| December 2013 | Ashkelon | The Institute for Judges` Training | Defenses in Libel Suits |

| | | | |
|---|---|---|---|
| January 2013 | Ashkelon | The Institute for Judges` Training | Psychology of Causation |
| March 2012 | Ma`aleh HaHamisha | Ministry of Environmental Protection | Nuisance Law and Remedies in Torts |
| February 2012 | Neve Ilan | The Institute for Judges` Training | Challenges of Environmental Protection – Policy, Law, and Action |
| November 2011 | Academic Center of Law & Business | Law faculty, Faculty Seminar | Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts' Decisions to Accept or Reject the Loss of Chance Doctrine |
| October 2011 | Yad Hashmona | Ozmat forum for legal aids | Toxic Torts |
| March 2011 | Cornell University | Berger International Legal Studies Program Speaker Series | The Influence of Betrayal on Law Making: Lessons from the United States and Israel |
| December 2008 | Faculty Seminar, Academic Center of Law and Business | Faculty Seminar, Law School | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| November 2008 | The Law Faculty, Tel Aviv University | The Yuval Levy & Co. Law & Environment Workshop | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| June 2008 | The College of Management Academic Studies, Rishon LeZion | Faculty Seminar, Law School | Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts |
| May 2008 | Haifa University | Judges` Conference | Uncertainty and Causation in Tort Cases |

| | | | |
|---|---|---|---|
| October 2007 | Neve Ilan | The Institute for Judges` Training | Toxic Torts |
| January 2006 | Netanya College | Environmental Law Professors Forum | The Future of Toxic Torts |

## 8. Research Grants

### e. Grants Awarded

| **Role in Research** | **Co-Researchers** | **Topic** | **Funded by/ Amount** | **Year** |
|---|---|---|---|---|
| Co-PI | Eyal Katvan (PI), Tamar Ashkenazi (PI), Israel Doron, and Eitan Mor | The Consequences of Policy Changes regarding the use of Age Criteria in Organ Transplantation<br><br>Publications: article No. 11 | The Israel National Institute for Health Policy Research 123,000 NIS | 2017 |
| PI | Eyal Katvan | Honor in a Changing Society - Research Workshop Grant | Israel Science Foundation<br><br>68,000 NIS | 2015 |
| PI | Eyal Katvan<br><br>Chemi Ben Noon | Lawyers (in)Civility in Courts – Empirical Research of Judges' Attitudes<br><br>Publications: article No. 9 | David Weiner Center for Lawyers Ethics and Professional Responsibility<br><br>5,000 NIS | 2014 |
| PI | Eyal Katvan | Kavod (honor) and its Legal Defense in Mandatory Palestine: Values in “Melting Pot” Societies<br><br>Publications: articles No. 16, 18, 19, 20 | Israel Science Foundation 360,000 NIS | 2013 |

**9. Teaching**

**Courses Taught in Recent Years**

| **Year** | **Name of Course** | **Type of Course Lecture/Seminar/ Workshop/High Learn Course/ Introduction Course (Mandatory)** | **Degree** | **Number of Students** |
|---|---|---|---|---|
| 2002-2022 | Tort law | Mandatory Introductory Course 6-8 credits | LL.B. | 70-200 (most years I gave the course more than once) |
| 2004 - 2012 | Environmental law | High Learn Course | LL.B. | 20-90 |
| 2008 - 2010 | Environmental law and Policy | High Learn Course | LL.B. | 20-90 |
| 2018 - 2021 | Environmental law and Policy | High Learn Course | M.A. | 50 - 75 |
| 2013-2015 2017 2021 | Environmental law and Policy | Seminar | LL.B. | 12-25 |
| 2002-2005 2019 | Causation in torts | High Learn Course | LL.B. | 20-50 |
| 2004-2009 2011-2013 | Causation in torts | Seminar | LL.B. | 12-25 |
| 2008-2009 | Tortious adjudication under uncertainty | Seminar | LL.B. | 12 |
| 2009 2010 | Negligence | Seminar | LL.B. | 10 |
| 2015-2017 | Tortious protection of personal and economic interests | Seminar | LL.B. | 12-20 |
| 2005 - 2008 | Libel law | High Learn Course | LL.B. | 15-50 |

| | | | | |
|---|---|---|---|---|
| 2015-2021 | Libel and privacy law | Seminar | LL.B. | 12-25 |
| 2017-2021 | Libel and privacy law | Seminar | LL.M. | 12-20 |
| 2015-2017 2019 2021 | Psychology of Judging | High Learn Course | LL.B. | 15-50 |

## Publications

### A. Authored Books – Published

2a. Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, Libel Law, 2nd Ed., 2019, The Sacher Institute Hebrew University, The Israel Democracy Institute and Nevo Publishing, [556 pages]. Ranked A

2b . Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, Libel Law - De Lege Lata and De Lege Ferenda, 2005, The Sacher Institute Hebrew University and The Israel Democracy Institute, Heb., [487 pages]. Ranked A

3. **Boaz Shnoor**, Toxic Torts, 2011, Nevo Publishing and The Sacher Institute Hebrew University, Heb., [613 pages]. Ranked A

### B. Edited Books and Special Journal Issues – Published

4. 'Too Few Judges: Regulating the Number of Judges in Society' issue, Vol. 7(4) *The Oñati Socio-Legal Series*, 2017 (with Eyal Katvan, Ulrike Schultz and Avrom Sherr)

5. 'Too Few Judges' issue, Vol. 26(1), *The International Journal of the Legal Profession*, 2019 (with Eyal Katvan, Ulrike Schultz and Avrom Sherr) Ranked B

6. 'Too Much Litigation?' issue, Vol. 11(2) *The Oñati Socio-Legal Series*, 2021 (with Eyal Katvan, Ulrike Schultz, Guy Seidman and Avrom Sherr)

### C. Articles in Refereed Journals

#### Published

7. **Boaz Shnoor**, Volenti Non Fit Injuria: Theory and Reality, 1 *ALEI MISHPAT* 327-354 (2000, Heb.) Ranked B

8. **Boaz Shnoor**, The Theoretical Foundation of Proportional Liability in Israel, 37 *MISHPATIM LAW REVIEW* 177-218 (2007, Heb.) Ranked A

9. **Boaz Shnoor**, Causation in Fact in Toxic Torts, 23(2) *LAW STUDIES* (Bar-Ilan Law Review) 559-620 (2007, Heb.) Ranked A

10. Talma Izak-Biran, Richard Laster, Tamar Berman and **Boaz Shnoor**, Consequences of Ignoring Uncertainty – 'Probability of Causation' in Radiation Cases, 39(1) *ENVIRONMENTAL POLICY AND LAW* 70-72 (2009) [peer reviewed] SJR 0.178

11. **Boaz Shnoor**, Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts, 33(1) *AMERICAN JOURNAL OF TRIAL ADVOCACY*

71-112 (2009) Ranked 6th out of 32 in civil litigation and dispute resolution in Washington and Lee

12. Eyal Katvan, **Boaz Shnoor**, Between Civility and Reputation, Following C.A. 1104/07 Kheir v. Gil, 15 *HAMISHPAT* 71-110 (2010, Heb.) Ranked B

13. **Boaz Shnoor**, On the Relationship between Setting the Legal Rule and Adjudicating the Concrete Case, 10 *ALEI MISHPAT* 7-52 (2012, Heb.) Ranked B

14. **Boaz Shnoor**, Truth, Lies, and in Between them – Developments in Israeli Libel Law 2012, 8 *DIN U'DVARIM* 197-239 (2014, Heb.) Ranked A

15. Chemi Ben Noon, **Boaz Shnoor**, Eyal Katvan, Judges' Perception of Lawyers' Behavior in Court, 21 *HAMISHPAT* 11-49 (2015, Heb.) Ranked B

16. **Boaz Shnoor**, Sub Judice and Freedom of Speech – Words in the Air and the Dead Letter of the Law, 12 *ALEI MISHPAT* 261-284 (2015, Heb.) Ranked B

17 Eyal Katvan, Israel Doron, Tamar Ashkenazi, Hagai Boas, Michal Carmiel-Haggai, Michal Dranitzki Elhalel, **Boaz Shnoor**, Jacob Lavee, Age limitation for organ transplantation: the Israeli example, 46(1) *AGE AND AGEING*, 8–10 (2017) [peer reviewed] IP 10/2 (3 out of 53 Si: Geriatrics & Gerontology)

18 Eyal Katvan, **Boaz Shnoor**, Informed Consent to Legal Treatment – Lessons from Medical Informed Consent, 24(2) *THE INTERNATIONAL JOURNAL OF THE LEGAL PROFESSION* 125-144 (2017) [peer reviewed] SJR 0.22 Ranked B 2nd Quartile

19a **Boaz Shnoor**, Eyal Katvan, Court's Precious Time: Transparency, Honor and Judicial Scarce Resources, 7(4) *OÑATI SOCIO-LEGAL SERIES*, 825-846 (2017) [peer reviewed]

19b **Boaz Shnoor**, Eyal Katvan, A Perfect Façade?: Transparency, Honor and Judicial Scarce Resources, 26(1) *INTERNATIONAL JOURNAL OF THE LEGAL PROFESSION*, 143-158 (2019) [peer reviewed] SJR 0.22 Ranked B 2nd Quartile

20 Limor Zer-Gutman, Eyal Katvan, **Boaz Shnoor,** Lawyers' Honor in the Professional and Private Spheres, 11(2) *HAIFA LAW REVIEW (Din Udvarim)* 457-501 (2018) (Heb.) Ranked B

21 Doron Menashe, **Boaz Shnoor**, Sub Judice and Free Speech: Balancing the Right to a Fair Trial against Freedom of Expression in Israel, 18(1) *SAN DIEGO INTERNATIONAL LAW JOURNAL* 39-70 (2018) ranked 72 out of 163 under international law, in Washington and Lee ranking Ranked C

22 Eyal Katvan, **Boaz Shnoor**, An Angry worker: Honor, Anger and the Working Class Emotions in Informal Adjudication in Mandatory Israel, 3 *LAW, SOCIETY & CULTURE* 191-226 (2020) [peer reviewed] (Heb.)

23 Eyal Katvan, **Boaz Shnoor**, Don Quixote de la Corte: Serial Litigants, Emotions, and Access to Justice, 11(2) *OÑATI SOCIO-LEGAL SERIES* 503-533 (2021) [peer reviewed]

24 **Boaz Shnoor**, Eyal Katvan, Freedom of Expression, Honor, and Judicial Independence in Mandate Palestine 26(2) *ISRAEL STUDIES* 66-83 (2021). [peer review] SJR 0.13 Q2

25 Eyal Katvan, **Boaz Shnoor**, Physicians' Honor and Prestige in Pre-Israel Palestine, 25 *KOROT* 7-42 (2021)(Heb.) [peer reviewed]

26 **Boaz Shnoor**, Eyal Katvan, Reputation Struggles: A Jubilee of developments in Libel Law – Chronicles of a dynamic balance, 14 *NETANYA LAW REVIEW* 65-108 (2021) (Heb.) Ranked C

**Accepted for Publication**

27 **Boaz Shnoor**, Binding Precedent? Tort Cases not Creating Legal Rules, 28 *HAMISHPAT* __ (to be published 2022, approx. 30 pages)(Heb.) Ranked B

28 Eyal Katvan, **Boaz Shnoor**, In whose honor? The Debate regarding Court Dress *HAPRAKLIT* (TO BE PUBLISHED 2022, APPROX. 40 PAGES) (HEB.) RANKED B

## D. Articles or Chapters in Scientific Books

**Published**

29. Khalid Genaim, Mordechai Kremnitzer, **Boaz Shnoor**, *Libel Law*, *in* DEFENDING FREEDOM OF SPEECH IN THE DEMOCRATIC STATE pp. 179 – 233 (M. Kremnitzer ed., 2003, The Israel Democracy Institute, Heb.)

30. Tamar Gidron, **Boaz Shnoor**, *Pure Economic Loss in Israel*, *in* PURE ECONOMIC LOSS 186-217 (Mauro Bussani, Vernon Palmer, Eds., Routledge-Cavendish publishing, 2009). A different version of this paper was published as part of conference proceedings (see F.1) Ranked A

31. **Boaz Shnoor**, Israel Gilead, *Causal Uncertainty and Proportional Liability in Israel, in* PROPORTIONAL LIABILITY – ANALYTICAL AND COMPARATIVE PERSPECTIVES pp. 183-198 (Israel Gilead, Michael D. Green, Bernhard A. Koch, Eds., De Gruyter publishing, 2013)

32. **Boaz Shnoor**, Eyal Katvan, *The Ringworm Victims Compensation Law – 1994: Legislation and Court Decisions – between Rhetoric and Compensation, in* RINGWORM - THE INTERNATIONAL AND THE ISRAELI SAGA, (eds.: Shvarts S, Sadetzki S., Ben Gurion University Publication, 2018, Heb.) Ranked A

## E. Articles in Conference Proceedings

**<u>Published</u>**

33. Tamar Gidron, **Boaz Shnoor**, Pure Economic Loss in Israel, in *Israeli Reports to the XVII International Congress of Comparative Law* 199-230 (The Sacher Institute, 2009) A different version of this paper was published as a book chapter (see D.2)