## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHABTAI SCOTT SHATSKY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Case No. 08-496 (RJL)** |
| ) | |
| **SYRIAN ARAB REPUBLIC, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>
(March *17*, 2024) [Dkt. #61]

More than two dozen individuals sued the Syrian Arab Republic for damages arising from two terrorist attacks that occurred many years ago in the West Bank. Syria appeared solely to contest jurisdiction, which it did unsuccessfully, and so plaintiffs have moved for a default judgment. Because there is satisfactory evidence that the Court has jurisdiction and that Syria is liable, the Court will GRANT plaintiffs' motion as to liability and refer the case to a special master to determine damages.

### BACKGROUND

**I.    Factual Background**

**A.    Mendelson Attack**

On March 26, 1991, Yair Mendelson was driving on a road east of Ein Qinya when a roadside ambush fired at his car. Spitzen Decl. Ex. A [Dkt. #51-2] at 3.[1] Minutes later, Yair's family friend and neighbor, Elizabeth Har-Zahav, drove up to the ambushed car.

---

[1] Citations to the exhibits to the Spitzen Declaration refer to the page numbers that appear in the ECF stamp at the top of each page.

Har-Zahav Decl. [Dkt. #60] ¶¶ 3–10.  She opened the car door to find Yair, whom she realized was dead.  *Id.* ¶¶ 10, 13.  Israeli police officers eventually arrived, and their investigation uncovered over twenty bullet casings on a nearby hill and over a dozen bullet holes on the car.  Spitzen Decl. Ex. A at 3–6.  Later that evening, Har-Zahav went to the Mendelsons' home and conveyed the tragic news to Yair's wife, Miriam.  Har-Zahav Decl. ¶ 17.  For years thereafter, Har-Zahav and Miriam suffered emotional injuries.  *Id.* ¶ 18; Miller Itay Decl. [Dkt. #59] ¶ 11.[2]  Har-Zahav and Miriam were U.S. citizens at the time of the Mendelson Attack.  Har-Zahav Decl. ¶ 2; Miller Itay Decl. ¶ 2.

According to Palestinian affairs expert Arieh Dan Spitzen, the Mendelson Attack was carried out by the Popular Front for the Liberation of Palestine (the "PFLP").  Spitzen Decl. [Dkt. #51-1] ¶¶ 18, 31.  His opinion is based on three pieces of evidence.  First, the manner of the ambush—carried out from a hill with good cover, near a bend in the road where traffic slows down—indicated professional planning.  *Id.* ¶ 20; *see* Spitzen Decl. Ex. A at 3–4.  Second, the PFLP reported in the April 1991 issue of its monthly newspaper that its soldiers had killed someone near Ein Qinya, and Spitzen confirmed there were no other attacks in that area during that period.  Spitzen Decl. ¶¶ 26–27; *see* Spitzen Decl. Ex. C [Dkt. #51-4].  Finally, subsequent ballistics testing indicated that two particular guns used in the attack were also used in a different attack in June 1991, an attack for which the PFLP also claimed credit.  Spitzen Decl. ¶¶ 21–24, 29–30; *see* Spitzen Decl. Ex. B [Dkt. #51-3] at 4–5; Spitzen Decl. Ex. D [Dkt. #51-5].

---

[2] Miriam has since remarried and now goes by Miriam Miller Itay.  Miller Itay Decl. ¶¶ 7–9.

**B.      Shatsky Attack**

On February 16, 2002, a suicide bomber set off an explosive device at a pizzeria at a crowded outdoor mall in Karnei Shomron.  Second Spitzen Decl. [Dkt. #52-1] ¶¶ 18, 20. The explosion killed three young people: Keren Shatsky, 15; Nehemia Amar, 15; and Rachel Thaler, 16.  *Id.* ¶ 20.  As a result of Keren's death, her parents and siblings have suffered emotional injuries.  Shatsky Decl. [Dkt. #61-4] ¶ 3.[3]  As a result of Rachel's death, her parents and brothers have suffered emotional injuries.  Thaler Decl. [Dkt. #61-5] ¶ 3.[4]

Many others suffered physical injuries from the explosion.  Among them were Leor Thaler (Rachel's brother), Hillel Trattner, Chana Friedman, and Steven Braun.  *Id.* ¶¶ 1, 4; Trattner Decl. [Dkt. #61-6] ¶¶ 1–2; Edri Decl. [Dkt. #61-7] ¶ 2;[5] Braun Decl. [Dkt. #61-3] ¶ 2.  As a result of those injuries, Leor's parents and brothers, Hillel's parents and wife, and Chana's mother and siblings all suffered emotional injuries.  Thaler Decl. ¶¶ 4–5; Trattner Decl. ¶¶ 3–4; Edri Decl. ¶¶ 3–4.[6]

According to Spitzen, the PFLP also carried out the Shatsky Attack.  His opinion is based, most notably, on the fact that the PFLP repeatedly claimed credit for the bombing

---

[3] Keren's parents are Shabtai Scott and Jo Anne, and her siblings are Yoseph, Miriam, David, Tzippora, and Sara.  Shatsky Decl. ¶ 2.  Every family member was a U.S. citizen at the time of the Shatsky Attack.  *Id.* ¶ 3.

[4] Rachel's parents are Michael and Ginette, and her brothers are Leor, Zvi, and Isaac.  Thaler Decl. ¶ 2.  Every family member except Ginette was a U.S. citizen at the time of the Shatsky Attack.  *Id.* ¶ 6.

[5] Chana has since married and now goes by Chana Edri.  Edri Decl. ¶ 1.

[6] Hillel's parents are Aron and Shelley, and his wife is Ronit.  Trattner Decl. ¶¶ 3–4.  Hillel, Aron, and Shelley were U.S. citizens at the time of the Shatsky Attack, but Ronit was not.  *Id.* ¶ 5.  Chana's mother is Bella, and her siblings are Miriam, Ilan, Yehiel, and Zvi.  Edri Decl. ¶ 3.  Every family member was a U.S. citizen at the time of the Shatsky Attack.  *Id.* ¶ 5.

and celebrated the suicide bomber, a PFLP operative.[7]  It did so on its official website on the same day as the bombing; in its February 2002 issue of its periodical; in a separate memorial section on its website; in a memorial ceremony in February 2014; and in a recorded interview of a senior official in December 2016.  Second Spitzen Decl. ¶¶ 23–35; *see* Second Spitzen Decl. Exs. A–G.  Those claims to credit are rarely issued falsely, notes Spitzen, and he was unable to find any other organization's claim of credit for the bombing. Second Spitzen Decl. ¶¶ 36–42.  Further, Spitzen's opinion is corroborated by a 2007 report from the Israel Security Agency, which conducted its own investigation of the bombing and other terrorist attacks between 2000 and 2007.  *Id.* ¶¶ 43–48; *see* Second Spitzen Decl. Ex. H.

### C.    Syria and the PFLP

According to Middle East and terrorism experts Daniel Byman, Matthew Levitt, and Jonathan Spyer, both attacks were made possible by Syria.  Since 1982, the PFLP has been headquartered in Syria, where it has been able to operate safely, with less exposure to Israel and other hostile governments.  Byman Decl. [Dkt. #49-1] at 8, 19; Levitt Decl. [Dkt. #49-2] at 11; Spyer Decl. [Dkt. #50-2] ¶¶ 23, 38.  Around the same time, Syria started providing financial assistance, weapons, training facilities, intelligence, and travel assistance to the PFLP.  Byman Decl. at 20; Levitt Decl. at 21–24; Second Levitt Decl. [Dkt. #50-3] at 38. The business of terrorism is costly—expenses include weapons, facilities, salaries, training, transportation, and propaganda—and so Syria's provisions have allowed the PFLP to keep

---

[7] The operative's identity was later confirmed by Israeli authorities when DNA from the suicide bomber's remains was compared to samples provided by his parents.  Second Spitzen Decl. ¶ 18 n.3.

operating and thus to carry out attacks like the Mendelson Attack and the Shatsky Attack. Byman Decl. at 8, 20; Levitt Decl. at 24; Spyer Decl. ¶¶ 33, 38–43.

## II.    Procedural History

This action was filed in March 2008 by all of the above-mentioned victims and family members except Nehemia Amar (collectively, "plaintiffs"), brought against Syria and certain of its governmental entities and officials (collectively, "defendants"). Compl. [Dkt. #1] ¶¶ 4–27. Plaintiffs seek relief under the cause of action provided in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(c), and under various theories of tort liability. Compl. ¶¶ 69–177.

Plaintiffs first attempted to serve defendants through the clerk of the court, pursuant to the requirements in 28 U.S.C. § 1608(a)(3). *See* Request to Effect Service [Dkt. #6]. When that method proved unsuccessful, plaintiffs attempted to effect service through the Secretary of State, pursuant to the requirements in 28 U.S.C. § 1608(a)(4). *See* Request to Effect Service [Dkt. #10]. Syria and the named governmental entities were successfully served. *See* Return of Service [Dkt. #17]. Syria appeared solely to contest jurisdiction, which it did in a motion to dismiss. Mot. to Dismiss [Dkt. #19] at 29. The Court denied that motion. Min. Order (Feb. 25, 2010). Syria then failed to respond to the complaint, and so plaintiffs requested and obtained an entry of default in March 2010. *See* Entry of Default [Dkt. #25]; Entry of Default [Dkt. #26].

For roughly ten years thereafter, this case sat without much movement, as most of plaintiffs here litigated in a related action against two Palestinian entities for their role in supporting the Shatsky Attack. *See Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016,

1027 (D.C. Cir. 2020).[8] That case ended when our Circuit Court held that this Court lacked personal jurisdiction over the Palestinian defendants, *id.* at 1022, and so the Court and plaintiffs turned their attention back to this case. In the fall of 2020, with defendants still absent, plaintiffs filed multiple evidentiary submissions in support of a forthcoming motion for default judgment. The case then sat for another two-plus years until, spurred by this Court's order, plaintiffs filed a motion for default judgment in February 2023. Pls.' Mot. for Entry of J. by Default on Liability [Dkt. #61]; Mem. in Supp. of Pls.' Mot. ("Mot.") [Dkt. #61-1]. The motion seeks judgment against Syria only, because "each [d]efendant is treated as the state itself under the FSIA" and so "Syria is the only [d]efendant in this case against whom damages can be sought." *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 64 (D.D.C. 2008) (Collyer, J.), *aff'd*, 646 F.3d 1 (D.C. Cir. 2011); Mot. at 3. And the motion addresses liability only, because the FSIA authorizes the court to appoint a special master to hear damage claims brought thereunder, 28 U.S.C. § 1605A(e)(1), which plaintiffs believe is appropriate here. Mot. at 5–6.

## LEGAL STANDARD

Default judgment against a foreign state is warranted only if a movant "establishes [its] claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). That burden is not particularly onerous: "§ 1608(e) does not 'require the court to demand

---

[8] The action against the Palestinian defendants originally included all of the Syrian defendants here, but plaintiffs voluntarily dismissed those Syrian defendants and filed a new action against them. *Shatsky*, 955 F.3d at 1023. That new action was filed in 2006. *See* Civil Docket No. 06-724 (RJL). After 2008 amendments to the FSIA, *see* National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44, the present action was filed under the new statutory framework, and the 2006 action was eventually consolidated with this one. *See* Pls.' Resp. to Order to Show Cause [Dkt. #35] at 2–3; Min. Order (Jan. 2, 2013).

more or different evidence than it would ordinarily receive'; indeed, 'the quantum and quality of evidence that might satisfy a court can be less than that normally required.'" *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (citation omitted), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). "The 'satisfactory' evidence standard can be met through 'uncontroverted factual allegations . . . supported by documentary and affidavit evidence.'" *Ewan v. Islamic Republic of Iran*, 466 F. Supp. 3d 236, 244 (D.D.C. 2020) (Bates, J.) (omission in original) (quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (Lamberth, J.)). An evidentiary hearing is not required. *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 157 (D.D.C. 2017) (Huvelle, J.).

## DISCUSSION

### I.   Jurisdiction

Before entering a default judgment, "the Court must—at a minimum—satisfy itself that it has subject-matter jurisdiction over the claims and personal jurisdiction over the defendants." *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 336 (D.D.C. 2020) (Moss, J.). The Court has both here.

### A.   Subject Matter Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1330(a), which "confers jurisdiction on district courts to hear suits brought by United States citizens and by aliens when a foreign state is *not* entitled to immunity." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, foreign governments are generally immune from jurisdiction, unless an exception applies. 28 U.S.C. § 1604.

Plaintiffs argue that the terrorism exception applies.  Mot. at 26–34.  That exception eliminates immunity

> in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1).

That exception applies here.  Plaintiffs seek damages against Syria for personal injury and death caused by the Mendelson Attack and the Shatsky Attack.  Compl. at 41. Both attacks, carried out with signs of advance planning by the PFLP, meet the definition of an "extrajudicial killing" under section 3(a) of the Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73, as incorporated by 28 U.S.C. § 1605A(h)(7).  Each was "(1) a killing; (2) that [was] deliberated; and (3) [was] not authorized by a previous judgment pronounced by a regularly constituted court."  *Owens*, 864 F.3d at 770.  And neither attack falls within the exception for "killings carried out under the authority of a foreign nation acting in accord with international law."  *Id.*

Further, as explained by multiple experts, Syria provided "material support or resources for" the two attacks.  Before and through each attack, Syria provided the PFLP with funding, weapons, a safe headquarters, and more, all of which fit within the definition of "material support or resources."  28 U.S.C. § 1605A(h)(3) (incorporating 18 U.S.C. § 2339A(b)(1)); *see, e.g.*, Levitt Decl. at 24–25.  Although there is no evidence that Syria's provision of support "caused *this particular act*," *Est. of McCarty v. Islamic Republic of*

*Iran*, 2020 WL 7696062, at \*4 (D.D.C. Dec. 28, 2020) (Leon, J.), or that the attacks would not have been possible "but for" Syria's support, *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004), such evidence is *not* required.  All that is required is a reasonable connection between Syria's acts or omissions and plaintiffs' injuries—that is, that the acts were a substantial factor in leading to the injuries and that the injuries were reasonably foreseeable.  *Owens*, 864 F.3d at 794.  Syria's provisions were a substantial factor in the two attacks: they expanded the PFLP's "operational capacity," allowing it to function safely and effectively from Syria, so that it could plan and execute attacks like the two at issue here.  *Selig v. Islamic Republic of Iran*, 573 F. Supp. 3d 40, 61 (D.D.C. 2021) (McFadden, J.).  And those attacks were reasonably foreseeable, and indeed part of Syria's strategy to harm and pressure Israel and other rivals in the region.  *E.g.*, Byman Decl. at 9–12.  Finally, the material support has been provided within the scope of Syrian officials' employment: Syria's support has flowed through its Ministry of Defense and subagencies, whose leaders have managed that support with approval from Syria's president and other senior leaders.  *E.g.*, *id.* at 11.

The terrorism exception also has three other requirements: (i) that "the foreign state was designated as a state sponsor of terrorism [either] at the time [of] the act" or at other times not relevant here; (ii) that "the claimant or the victim was, at the time [of] the act[,] . . . [either] a national of the United States" or one of two other categories not relevant here; and (iii) that the claimant gave the foreign state a reasonable opportunity to arbitrate the claim "in a case in which the act occurred in the foreign state."  28 U.S.C. § 1605A(a)(2)(A).  Those requirements are easily met.  First, "Syria has been designated a

state sponsor of terrorism since 1979." *Gates*, 646 F.3d at 2. Second, all victims and most claimants were, at the time each was injured or killed, U.S. citizens and therefore U.S. nationals. *See* 28 U.S.C. § 1605A(h)(5) (incorporating 8 U.S.C. § 1101(a)(22)). Although Ginette Lando Thaler and Ronit Trattner were not U.S. citizens at the time of the Shatsky Attack, Thaler Decl. ¶ 6; Trattner Decl. ¶ 5, their presence in this action does not deprive the Court of jurisdiction, because the terrorism exception can apply as long as "the claimant *or* the victim" was a U.S. national at the time of the attack. 28 U.S.C. § 1605A(a)(2)(A)(ii); *see Owens*, 864 F.3d at 805. Finally, the third requirement does not apply, because neither attack here occurred in Syria. 28 U.S.C. § 1605A(a)(2)(A)(iii); *see Force*, 464 F. Supp. 3d at 358 n.6.

Accordingly, Syria's material support of the PFLP exempts it from sovereign immunity under 28 U.S.C. § 1605A. *Heching v. Syrian Arab Republic*, 2023 WL 2384393, at *5 (D.D.C. Mar. 5, 2023) (Chutkan, J.).

**B.    Personal Jurisdiction**

The Court likewise has personal jurisdiction over Syria. Personal jurisdiction over a foreign state exists when a court has subject matter jurisdiction and service has been made in compliance with 28 U.S.C. § 1608. 28 U.S.C. § 1330(b). Section 1608, in turn, sets forth "four methods of service in descending order of preference." *Barot v. Embassy of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). "Syria does not have a special arrangement for service with [p]laintiffs, nor is it a party to an international convention on service," and so "[p]laintiffs did not need to attempt service in accordance with § 1608(a)(1) or (a)(2)." *Sotloff v. Syrian Arab Republic*, 525 F. Supp. 3d 121, 141 (D.D.C. 2021) (Kelly, J.).

When service through the third method proved unsuccessful within 30 days, plaintiffs turned to the fourth, which allows a plaintiff to have the clerk of the court send the summons, complaint, and notice of suit (with translations) to the Secretary of State to be transmitted through diplomatic channels to the foreign state. 28 U.S.C. § 1608(a)(4). Plaintiffs here did just that. *See* Return of Service. Because Syria was properly served, the Court has personal jurisdiction over it.

## II.    Liability

### A.    U.S. National Plaintiffs

Syria is liable to plaintiffs who are U.S. nationals under 28 U.S.C. § 1605A(c). That statute makes a state sponsor of terrorism liable to U.S. nationals (and others not relevant here) for personal injury or death caused by the same acts that exempt the state from sovereign immunity under the terrorism exception discussed above. In other words, "[t]here is almost total 'overlap between the elements of [§ 1605A(c)'s] cause of action and the terrorism exception to foreign sovereign immunity.'" *E.g.*, *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 86–87 (D.D.C. 2018) (Moss, J.) (second alteration in original) (quoting *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 205 (D.D.C. 2017) (Kollar-Kotelly, J.)). Because plaintiffs have offered proof sufficient to exempt Syria from sovereign immunity, they have also established Syria's liability to the U.S. nationals under 28 U.S.C. § 1605A(c). *Id.*

### B.    Foreign National Plaintiffs

Although the two plaintiffs who are not U.S. nationals, Ginette Lando Thaler and Ronit Trattner, cannot recover under 28 U.S.C. § 1605A(c), the statute "did not displace a

[foreign national] claimant's ability to pursue claims under applicable state or foreign law upon the waiver of sovereign immunity." *Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*, 892 F.3d 348, 353 (D.C. Cir. 2018) (alteration in original) (quoting *Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 572 (7th Cir. 2012)). And those two plaintiffs have established Syria's liability as to them under Israeli tort law.

As a preliminary matter, Israeli law applies. The applicable choice-of-law doctrine here is the District of Columbia's, which "blend[s] a 'governmental interests analysis' with a 'most significant relationship' test." *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 841–42 (D.C. Cir. 2009). Israel has a stronger interest than does the District of Columbia in having its law apply to attacks in or near Israeli settlements, affecting foreign nationals, and without any evidence of an intent to affect the United States. *See id.* at 843; *Force*, 464 F. Supp. 3d at 373–74. Meanwhile, "the only relationship this Court is aware of between D.C. and the" Shatsky Attack, in which Ginette's children and Ronit's husband were victims, "is that this jurisdiction happens to be a proper venue under the FSIA venue statute." *Henkin v. Islamic Republic of Iran*, 2021 WL 2914036, at *5 (D.D.C. July 12, 2021) (Lamberth, J.). For similar reasons, Israel also has the most significant relationship to the attacks. *See Oveissi*, 573 F.3d at 842 (looking to same facts under both tests).

When applying foreign law, the Court may "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. To that effect, plaintiffs have submitted an expert declaration from Dr. Boaz Shnoor. *See* Shnoor Decl. [Dkt. #61-2]; *see also Force*, 464 F. Supp. 3d at 374–75 (relying primarily on expert declaration from Shnoor to

find liability for negligence under Israeli law); *Borochov v. Islamic Republic of Iran*, 589
F. Supp. 3d 15, 38 (D.D.C. 2022) (McFadden, J.).

Analyzing that declaration, I conclude that Syria is liable for negligence.  Although
that tort under Israeli law "refers to a much wider range of tortious conduct than under
American law," Shnoor Decl. ¶ 12, the same four elements apply: duty, breach, causation,
and harm, *id.* ¶ 13.  Syria had a duty of care to Ginette and Ronit because "a reasonable
person could have foreseen" that its support of the PFLP could result in a bombing like the
Shatsky Attack.  *Id.* ¶¶ 18–20.  And that duty extended to Ginette as the mother of direct
victims and to Ronit as the wife of a direct victim.  *Id.* ¶¶ 21–22.  Syria also breached its
duty because its material support "demonstrates a lack of care."  *Id.* ¶ 23.  As to causation,
Israeli law requires both factual and legal causation.  *Id.* ¶ 24.  Syria's material support
"increased the likelihood" of the Shatsky Attack, which shifts the burden to Syria to prove
that its conduct was not the cause of the attack.  *Id.* ¶ 25.  Because it has failed to carry that
burden by failing to appear, causation in fact is satisfied.  *Id.*  Legal causation is also
satisfied, because a "reasonable person could have foreseen" that a bombing like the
Shatsky Attack could have happened as a result of Syria's support of the PFLP.  *Id.* ¶ 26.
Finally, Ginette and Ronit have each suffered emotional injuries resulting from their loved
ones' physical injuries from the Shatsky Attack.  Thaler Decl. ¶¶ 3, 5; Trattner Decl. ¶ 3.
They have therefore established Syria's liability for negligence.[9]

---

[9] The Court therefore need not decide whether Syria is also liable for the PFLP's battery under
theories of vicarious liability, aiding and abetting, and civil conspiracy.  Shnoor Decl. ¶¶ 28–40; *see
Borochov*, 589 F. Supp. 3d at 39 n.14.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for default judgment as to liability will be GRANTED, and the Court will order plaintiffs to file a motion to appoint a special master to administer the damages portion of these proceedings.  An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge